23 127
94 431

## ZEIGLER & HALL *vs.* DAVID.

1   A party against whom an injunction or process of seizure has been obtained in a chancery suit, and who has been injured in consequence thereof, may, after the dismissal of the bill for want of prosecution, bring his action at law, without permission from the Chancery Court, to recover on the bond of indemnity required by the *fiat* as a pre-requisite to obtaining the process.

2.   In such case, an averment that the bill was dismissed, without stating the grounds of dismissal, is sufficient.

3.   'And it is unnecessary to aver notice of the dismissal to the obligors in the bond, as they are parties to the record, and presumed to be cognizant of the disposition finally made of the cause.

4.   When plaintiff's slaves are taken under a writ of seizure, issued out of chancery on a bill for divorce filed against him by his wife, and, the bill being dismissed for want of prosecution, plaintiff brings suit on the indemnity bond to recover damages, the record of a second suit commenced by the wife for the same purposes as the first, and still pending, is relevant and admissible evidence for the defendants in the suit on the bond, if it is shown that the slaves seized in the first suit, after the institution of the second, were in the custody of the law, or of one of the suitors in the Chancery Court by its order ; but when the bill of exceptions does not set out the record of the second suit, and only recites that, on the filing of the second bill, an order was granted, commanding the register to issue a writ according to the prayer of the bill, on complainant's entering into bond " conditioned to have said slaves forthcoming to abide the final order and decree of the court," and that the bond was taken, pursuant to the order, conditioned to pay plaintiff " all such costs and damages as he might sustain by the wrongful suing out of the injunction and process," the Appellate Court cannot infer that a writ of seizure was issued in the second suit, and the record is therefore irrelevant and inadmissible.

5.   It is not error to allow plaintiff to amend his declaration, even after the trial has been commenced, by the alteration of a date alleged under a *vilelicet.*

6.   If the husband turn his wife out of doors, or by his misconduct compel her to leave him, he is responsible for necessaries furnished her by another; but the labor and services of slaves applied to the support and maintenance of the wife, cannot be regarded as necessaries, though their value was not more than sufficient for her necessary support and maintenance, nor can the husband be charged with their value in a court of law.

7.   'In debt on bond conditioned to indemnify the obligee for all costs and damages he might wrongfully sustain by the suing out of a writ of seizure from the Chancery Court, the death of one of the slaves seized under the writ before the time of trial, does not affect the defendant's liability for hire.

Zeigler & Hall v. David.

8. In such case, plaintiff may recover the damage actually sustained, without proof of malice in suing out the process.

9. The transcript of the record of the chancery suit showing the dismissal of the bill for want of prosecution, is *prima facie* evidence that the writ of seizure was wrongfully obtained.

10. And if the possession of the slaves is not restored to the plaintiff, he is entitled to recover their hire down to the time of trial, although, after the dismissal of the first bill for want of prosecution, a second was filed for the same purposes, and a new bond given, conditioned for the forthcoming of the slaves to abide the final order and decree of the court.

ERROR to the Circuit Court of Autauga.

Tried before the Hon. GEO. D. SHORTRIDGE.

The facts will sufficiently appear from the opinion of the court.

N. HARRIS, for plaintiffs in error :

1. The declaration should show that there was an order of the court in which the chancery suit was pending, dismissing the bill, and that the defendant have leave to bring suit on the injunction bond, and an order that defendant have leave to withdraw the bond for the purpose of bringing suit on it.

2. The declaration should show that plaintiffs in error had notice of the dismissal of the bill, and that the bill was dismissed on a hearing on the merits.

3. The plaintiff in the court below was not entitled to recover of the defendants any damages for the detention of the slaves after the filing of the second bill for divorce, and the taking of the second bond; and there was, therefore, error in rejecting the record of the second bond, which was offered in evidence by the defendants below.—Winston & Fenwick v. Rives, 4 Stew. & P. 281 ; Brooks & Brown v. Shepherd, 4 Bibb 572.

4. The court erred, in permitting the plaintiff below to amend his declaration.

5. The court should have admitted the evidence offered by the defendants below, showing that the plaintiff had by his conduct driven his wife to separate from him, that the labor and services of the slaves had been applied to her support, and that their labor and services were not more than sufficient to maintain her. If the husband turn his wife out of doors without sufficient cause, or she leave him on account of ill treatment, he will be liable for necessaries furnished to her.—Story on Contracts

Zeigler & Hall v. David.

114, § 107 ; Chitty on Contracts 173 ; Clancy on Husband and Wife 28,29; 11 E. C. L. R. 64. In all actions arising from con-tracts, a party can only recover to the extent of the actual dam-age sustained.—2 Green. Ev. 208 ; Sedgwick on Damages (2 ed.) 430, 431, 441, 442, 446 ; Hatchett v. Gibson, 13 Ala 594; 9 East 72 ; 2 Burr. 1210 ; 2 Denio 616.

6. The record of the suit showing the dismissal of the bill, does not show that the injunction was sued out wrongfully.—3 Phillips on Evidence (C. & H.'s Notes) 916.

7. The plaintiff below was not entitled to recover damages, for the detention of the slaves, beyond the dismissal of the bill, or at least, beyond the time of filing the second bill, and giving the second bond.

ELMORE & YANCEY, and S. F. RICE, contra :

1. The count demurred to contains every material allega-tion.—I Iredell 139.

2. The transcript offered in evidence by plaintiffs below, was properly admitted, because : 1. The court had power to permit the amendment to be made during the trial.—Bannister v. Wetherford, 7 B. Mon. 271 ; 2. There was really no variance between the declaration and the transcript as it stood before the amendment, the actual date of the dismissal, as long as it was alleged to be before suit brought, being immaterial, or a collat-eral issue ; and being alleged without vouching the record, and not as descriptive of it.—3 Stark. Ev. 1599, 1603; Henry v. Til-son, 17 Vermont R. 479, 484; Martin v. Miller, 3 Missouri 135.

3. The transcript offered in evidence by plaintiff in error, was properly rejected : 1. Because it in no way appeared that any writ of seizure ever issued, or that the negroes involved were ever seized by virtue of the proceedings set forth in the trans-cript, and the proof was, that the defendant below had never re-delivered the negroes : all intendments will be in favor of the judgment. 2. It was properly rejected, because the plaintiff in error was a wrong-doer, and, until he restored the possession which he wrongfully obtained by abuse of the law's process, he cannot be allowed to set up that he has since sued out another process, under which he retains the negroes, and thus limit the damages.—5 Barn. & Ald. 835 ; Moore v. Wallis et al., 18 Ala. 403 ; Leavitt v. Smith, 7 ib. 182. 3. Because Zeigler,

14

having obtained possession of the slaves under and by means of the bond sued on, until he restores possession to David, is not in a situation to set up, in mitigation of damages, that by his act another process has been sued out, restraining David from taking possession of them.—Braley v. Peck & Clark, 22 Ala. 361 ; Upham v. McBride, 10 B. Mon. 202; Hodges v. Gewin, 6 Ala. 478§; McLane v. Spence, 11 ib. 172. 4. Because, though it should be conceded a writ of seizure issued, yet, as the bill and indemnity bond were only offered for a special purpose, viz., " to show that a second injunction, similar to the first, had been given," and the bill and indemnity bond contained no evidence of the issuance of such injunction bond, they were properly rejected as irrelevant. 5. Because, as the transcript was offered only for a particular purpose, it was an admission that all else in it was irrelevant and incompetent.—9 Ala. 959 ; and therefore an admission that there was nothing in it to show a seizure of the slaves. 6. Because a record is not evidence of any fact which can only be inferred by the court ; and in this case, the seizure would have to be inferred.—McCrary v. Remson, 19 Ala. 430. 7. Because the measure of damages was, the value of the property at the time David was dispossessed, increased by the damages which he was proved to have suffered by the loss of possession.—11 U. S. Digest 126 § 9 ; and the transcript was offered to prove that David could not recover damages beyond the date of the new bond. 8. Because it was offered as a whole, and contained irrelevant testimony, viz., the bill of divorce ; and when such is the case, the court may reject it as a whole.— Smith v. Zaner, 4 Ala. 99 ; Melton v. Troutman, 15 ib. 535. 9. Because the pendency of another proceeding in chancery in relation to the same slaves, cannot be pleaded in bar, nor set up in mitigation of damages.—McLane v. Spence, 11 Ala. 172 ; McCrary v. Remson, 19 ib. 430. 10. Because Zeigler, being a surety on the indemnity bond sued on, is not discharged from liability on it by the fact that he and Milly David have obtained an injunction out of chancery since the execution of the bond.— Hodges v. Gewin, 6 Ala. 478 ; Leavitt v. Smith, 7 ib. 182.

4. The separation of David from his wife, and its causes, and the facts that defendants gave up the slaves to Mrs. David, and that their labor was not more than enough for her necessary support, were entirely inadmissible as evidence in this action, for

various reasons. If urged as a set-off, they were unliquidated damages, and such cannot be the subject of set-off.—Dunn v. White & McCurdy, 1 Ala. 645; McCord v. Williams & Lowe, 2 *ib.* 71. Nor can a set-off be pleaded in an action like this, for unliquidated damages.—Brown v. Chambers, 12 *ib.* 698. Neither can they be admissible under the doctrine of recoupment, because they do not spring out of the same contract or transaction, and constitute no cause of action in Zeigler.— Batteman v. Pierce, 3 Hill 171. The defendants below, being in the position of a trespasser or wrong-doer, cannot be allowed to answer the plaintiff's demand, by setting up their application of the proceeds of the property even to the benefit of the owner.—5 Barn. &. Ald. 835; Sedgwick on Damages, *supra.* The cases cited from 2 Burr., 9 East and Sedgwick on Damages, proceed on the ground that the plaintiff had been paid his damages; but this in no way establishes that, because Zeigler hired the negroes to Mrs. David, plaintiff's damages have been paid. One can only have a right of action for necessaries furnished a wife separated from her husband, when he has furnished his own property to the wife. This cannot, then, enable Zeigler to plead that he loaned the negroes to Mrs. David, because they were not his property, but plaintiff's. In the cause of one who is dismissed from employment before the expiration of his term, and finds other employment, the law allows this to be shown in a suit on the contract, because plaintiff there was paid : such is not the case here.

5. The charge given by the court was correct. David's injury was continuous; and he had a right to recover up to the time of trial, if the injury continued until then. He complained of the wrongful seizure and detention of his slaves : they were detained up to the trial.—Puckett v. Smith, 5 Strobh. Law R. 26.

6. The first charge asked was properly refused, because the condition of the bond sued on was, to pay all damages which plaintiff might "wrongfully sustain."—Wilson v. Outlaw, Minor's Rep. 367; Garrett & Hill v. Logan, 19 Ala. 344. As the charge contained illegal as well as legal matter, the court could properly refuse it.

7. The second charge asked was properly refused, because the dismissal of the bill for want of prosecution, was a breach of

the bond, and evidence that the process was wrongfully sued out.—White v. Clay, 7 Leigh's R. 68 ; Garrett & Hill v. Logan, 19 Ala. 344; Badlam v. Tucker, 1 Pick. R. 236 ; 4 Hawks' R. 38 ; Secor v. Babcock, 2 Johns. R. 203.

8. The third charge asked was properly refused, because the bond for the forthcoming of the slaves was but an additional security, and David could select on which he would proceed.—Spivey v. Morris, 18 Ala.   ; Caperton v. Martin, 5 ib. 220.

9. The last charge asked was properly refused, because Zeigler had not delivered up the slaves on Sept. 30, 1850, and the forthcoming bond was but an additional security.—Spivey v. Morris, *supra ;* and for the further reason, that David could not sue on the injunction bond until Sept. 30, when the bill was dismissed.—Smith & Tatum v. Morris.

10. All the charges were properly refused, because they ask instructions relative to an " injunction ;" whereas, the process in relation to which plaintiff sought a recovery, was not an " injunction," but a " writ of seizure," or in nature of an attachment : the charges were, therefore, irrelevant and abstract.— Ross v. Ross, 20 Ala. 106; Long v. Rodgers, 19 ib. 322 ; Murray v. The State, 18 ib. 727 ; Bradford v. Marberry, 12 ib. 529 ; Ward v. Winston, 20 ib. 167. The charges asked were all calculated to mislead the jury, and were for that reason properly refused.—Moore v. The State, 18 Ala. 532; Felix v. The State, 18 ib. 720.

CHILTON, C. J.—This was an action of debt brought by Henry P. David against the plaintiffs in error, Edward J. Zeigler and W. T. Hall, to recover upon a bond in the penalty of five thousand dollars, executed by them and William R. Pickett, on the 14th day of January, 1848, payable to said David, and containing a condition " to indemnify said David for all costs and damages he may wrongfully sustain by the suing out certain process issuing from the register of the Chancery Court in Wetumpka, by the order of a circuit judge, acting as chancellor *pro hac vice;* by which order certain negro slaves were required to be seized and disposed of by the sheriff, as therein directed."

The *fiat* upon which the process issued, was made upon the exhibition of a bill by Mrs. Milly David, by said Zeigler and Thomas H. Hall, her next friends, charging, among other

things, that she is the wife of said Henry P. David, and that, at the time of their marriage, she was possessed of and owned considerable property, consisting of lands, negro slaves, and live stock, a list of all which is given in the bill, and which, with certain moneys loaned her husband since their marriage, went into his possession and were then retained by him, except a small part which he had sold to pay her debts to the heirs of Nicholas Zeigler, her former husband; that he had driven her from his home by repeated acts of cruelty, and threatened to run the property beyond the jurisdiction of the court. The bill prays for a divorce *a mensa et thoro*, or from the bonds of matrimony, and for an order of seizure of certain slaves; also for a suitable provision to be made for the complainant's support, and for an allowance to enable her to prosecute her suit.

The bill was answered by the defendant, and after remaining in court until October, 1850, was dismissed by the Chancellor for want of prosecution.

1. The defendant, in the court below, filed a demurrer to the declaration, which the court overruled, and which is, among other matters, here assigned for error. The first ground of objection to the sufficiency of the declaration, is, that there is no averment of any order of the Chancery Court permitting the plaintiff below to sue upon the bond. No authority has been cited in support of this position; and, upon principle, we see no reason why a party against whom an injunction or process of seizure has been obtained, and who has been injured in consequence thereof, may not, after the suit in chancery has been abandoned by the complainant and dismissed for want of prosecution, institute his action at law to recover upon the bond, required to be given by the *fiat* as a pre-requisite to obtaining such process, without any permission from the Chancery Court. True, the bond on which the action is founded constitutes a part of the record of that court; but our practice does not require profert to be made of it, and it is sufficient that the complainant produces it when demanded for the purposes of the trial.

2. The next objection is, that the declaration fails to aver that the bill was dismissed upon the merits, or that the defendants in the court below had notice of such dismissal. We think it altogether sufficient to aver that the bill was dismissed generally, without stating the ground of the dismissal. It amounts

to a final disposition of the cause, adverse to the complainant, and entitled the defendant in the chancery suit to recover upon the bond such damages as he had wrongfully sustained by its exhibition and obtaining the process prayed for.

3. As to the want of the averment of notice of the dismissal : It is only necessary to remark, that the dismissal of the bill was a matter peculiarly within the knowledge of the party whose duty it was to prosecute it, if founded on a meritorious ground of complaint; and hence, as one of the plaintiffs in error was the next friend of Mrs. David, by whom the bill was filed, and both were parties to the record, being on the bond, they must be presumed to be cognizant of the disposition which was finally made of the cause. At all events, this matter does not more properly lie within the knowledge of the plaintiff below, than of the defendants, and in such cases it is well settled that no notice need be averred.—1 Chitty on Pl. 338, and cases cited in notes.

4. As to the exclusion of the exemplification of the record of the second bill filed by Mrs. David, and the bond given upon the exhibition thereof : We regret that the bill of exceptions does not set out this rejected proof, in order that we might determine upon its legal effect, and ascertain whether or not it was relevant. It is very certain that it was competent evidence, if the record showed that, by proceedings under the *fiat*, the slaves seized in the first suit, after the institution of the second, were in the custody of the law, or, which is the same thing, in the possession of one of the suitors in the Chancery Court, by its order. It is competent for that court to provide for the safe custody of effects seized by its process, and it will, in justice to its suitors, pending the litigation, so provide as to render the effects so tied up as productive as may be consistent with their safe-keeping or security.

It appears that the slaves seized under the process obtained upon the exhibition of the first bill, were in Mrs. David's possession when the second bill was filed. It is said in the bill of exceptions, that the second bill contained substantially the same allegations as were set forth in the first, and that the *fiat* granted upon it directed the register that, if the next friend of the complainant should enter into bond in double the aggregate value of the slaves, whose names are set out, " conditioned to have said

slaves forthcoming to abide the final order and decree of the court," then that a writ issue according to the prayer of the bill. Neither the second bill nor the bond is set out; but, looking to the prayer of the first bill, we find that the complainant prays for an allowance as maintenance during the pendency of the suit, and also that the sum of five hundred dollars be paid her for the purpose of enabling her to prosecute her said suit against her husband, or such other sum as the Chancellor shall deem proper, " unless it should please the court to order and direct that complainant, by herself or her next friend, may give bond with security for the forthcoming of the said negroes, (the same mentioned in the bill of exceptions as seized under the process,) which complainant took away with her and has now in possession, to abide the decision of the court in the premises; in which event, complainant would not pray for any allowance for maintenance, or for the prosecution of the suit, *pendente lite*," &c. The *fiat* upon the second bill would seem to be predicated upon this prayer, and to contemplate that the complainant should be allowed to retain the possession of the slaves ; otherwise, it would not have required that her next friend should bind himself to have them forthcoming to abide the final order of the court. It is said that the second bond was taken " in pursuance of this *fiat*, payable as and in the amount specified in said order," &c. But, when speaking of it, the bill of exceptions states, that it was " conditioned to pay the said Henry P. David all such costs and damages as he might sustain by the wrongful suing out of the injunction and process," and that it was similar to the bond set out in the transcript offered in evidence by the plaintiff in the court below, which is the transcript of the proceedings had in the first suit. It is not stated that any process of injunction or order of seizure was issued under the *fiat*, or that any bond had been given for the forthcoming of the slaves to abide the final decree to be made under this second bill ; but merely that a bond has been given to pay such costs and damages as he might sustain, &c. Now, without more, this does not tend to prove that the slaves mentioned in the bill of exceptions were within the custody of the law. No injunction against the husband's maintaining an action, or taking said slaves into his possession, if he can do so peaceably, has issued, and no process has issued authorizing Mrs. David, or the next friend who exhibited the

bill, to retain them. So that the plaintiff in the court below might maintain his action at law for the recovery of the slaves; and as the subsequent bill and bond do not affect in any way the legal rights of the parties, the record of them was properly excluded.

It may be that the bond conforms to the *fiat*, and thus leaves the slaves in the possession of Mrs. David, upon the security afforded by it, that they shall be forthcoming to abide the final order to be made in the cause; and the Chancellor, in the exercise of his enlarged discretion upon the subject of alimony, may order the services of slaves thus held to go towards the support of the wife, and in lieu of a provision for her *pendente lite;* but this is not shown by the bill of exceptions, and by this alone we must be governed. As the matter is brought to view by the record before us, there was no error in excluding the evidence of the second bill and bond.

5. It was alleged in the declaration, under a *videlicet*, that the chancery suit was dismissed on the 1st day of October, 1848, whereas, upon the production of the record, it appeared to have been dismissed at an adjourned term of said court held on the 20th September, 1850; and thereupon the defendants moved to reject the record of the chancery suit for the variance. The court being about to sustain the objection, the plaintiff was allowed to amend his declaration, so as to aver the true date of the dismissal, and it is insisted by the plaintiffs in error, that in thus granting leave to amend, the court committed an error.— We do not think so. It has been held that, where an amendment makes a new case, as where it introduces new parties, or a change of parties, it cannot be allowed after an issue is submitted to a jury.—Watkins v. Canterberry, 4 Por. Rep. 415.— But such is not the result here, and there was no reason for postponing the trial on account of it. It was discretionary with the court to allow it, and we doubt not that the discretion was properly exercised. Banister v. Weatherford, 7 B. Monroe 271-2, is an authority in point sustaining such practice.

6. We come next to consider the main point relied upon by the counsel for the plaintiffs in error, which is, that they should have been allowed to show in the court below that the complainant in the chancery suit, Mrs. David, was forced by the cruel treatment of her husband, the defendant in error, to abandon

him, and that the labor and services of these slaves had been applied to the support of the wife while thus separated from him, and were not more than sufficient for that purpose.

It is an unquestionable rule of law, that if a husband turn his wife out of doors, or by his misconduct compel her to leave him, she goes forth under such circumstances to the world with an implied credit for necessaries. In other words, he is bound to provide her with necessary lodging, clothes and subsistence, and in case of her sickness, medicines, medical attendances and reasonable expenses incurred during illness; and if he fails to make such provision, she may obtain the same on his credit, and the person so making it, may sue the husband and recover therefor. Roper on Hus. & W. 110, 111; McQueen on H. & W. 140; Clancy on H. & W. 28, 29; Story on Contracts 114 § 107; Chitty on Con. 173.

The position in the case before us is rested by the counsel on this principle. He contends that, as these slaves were placed in the possession of Mrs. David, and furnished her a necessary support, that consequently her husband is the debtor to the plaintiffs in error, to the extent of the value of that support, and in an action to recover for the hire of the slaves, or for the slaves and hire by way of damages, the defendant has the right to recoup the value of the support thus provided for the wife.

The doctrine of recoupment has been very ably discussed, and we are not disposed to gainsay the soundness of the authorities cited by the counsel for the plaintiffs in error. But there is a point which was not argued by the counsel, or noticed merely incidentally, which in our opinion renders the doctrine wholly inapplicable to the present case. It is this: conceding that the plaintiff in error would have a right to recoup for necessaries furnished the wife, in an action against him on the bond given by him as one of the next friends of the wife, can the indirect provision made for the wife's support by leaving these negro slaves with her, be regarded as providing necessaries for her, as that term is understood by the courts of law? We are clear, both upon principle and authority, that it cannot. We will not say that there are no cases where the wife might not claim as necessary the actual service of domestics, and bind the husband for their hire, but the case before us is not that; for here it is not claimed that the actual services of the slaves were

necessary to attend upon and aid the wife, but that "the labor and services of the slaves were applied to the support and maintenance of the said Milly David, and that the value of such labor and services was not more than sufficient for her necessary support and maintenance;" clearly importing that the labor and services of the slaves were necessary as the means of procuring a support, and not that they were required to be expended in the personal attendance upon the wife.

If the husband could be charged for such a provision made for the wife, it would in many cases prove ruinous to both husband and wife; for, if the slaves should be taken sick, or by mismanagement their labor should not only prove unproductive but bring their possessor in debt, the provision, however ample it might have been under other circumstances, would fail altogether, and yet the husband would be bound for the hire of the slaves. The law empowers the wife to contract for necessaries, but not for the means by which she may procure them, and which at the same time she may misapply to some other object, or which, if not misapplied, may prove expensive or profitable as they are improperly or providently employed. She is not to become a trader or planter, or carry on any business as the means of procuring a livelihood, upon capital furnished at the husband's expense; but he is the proper person to manage his own business, and to work his own slaves, being liable for her support.

There is no difference in principle between the wife's borrowing money with which to purchase necessaries and being furnished with slaves as the means for procuring them, except that the latter is liable to greater objection, arising from the precarious nature of the means employed, resulting from the liability of the slaves to sickness, or to escape from service, or from her incapacity to manage them profitably. Now it has long been the settled law, that money loaned to an infant or to a married woman is not to be regarded, *in a court of law*, as necessaries, even though it were expended in the purchase of such articles as the infant would have been liable for, had he purchased them on a credit, or the husband would have been bound for, had the wife thus purchased them.

In Earle v. Peale, Salk. 386, it was said by Parker, C. J., " a *feme covert* may buy necessaries, and her act may make the husband liable, but she cannot borrow money to lay out for ne-

cessaries. So it is with an infant. He may buy, but cannot borrow money to buy necessaries." The reason given is that they may misapply the money.

In Darby v. Boucher, Salk. 279, the money borrowed had been actually laid out by the infant for necessaries, yet held that he was not liable to the lender.

The same doctrine is asserted in Ellis v. Ellis, 5 Mod. Rep. 368, and is laid down by Mr. Roper in his treatise upon Husband and Wife, p. 112. In a court of equity, however, it has been held that the lender should be, as it were, subrogated to the rights of the party who furnished the necessaries. So in Havris v. Lee, 1 Pr. Wms. Rep.‖483, it was said, " admitting the wife, *at law*, cannot borrow money though for necessaries so as to bind the husband, yet this money having been applied to the use of the wife for her cure and for necessaries, the plaintiff who lent it must stand in the place of the persons who found and procured the necessaries for the wife, and therefore, as such persons would be entitled to recover of the husband as his creditors, so the plaintiff shall stand in their place." The same doctrine was re-asserted in Marlow v. Pitfield, *ib.* 559. Mr. McQueen (H. & W. p. 141) says, " the furnishings must truly be *necessaries* within the meaning of the term as explained by the decisions ;" citing Emmett v. Norton, 8 Car. & Payne 506 ; see also 2 Leigh's N. P. 1093, mar.

These authorities may suffice to show that, in leaving the slaves with Mrs. David, the plaintiff in error did not, in *legal* contemplation, furnish her with *necessaries,* so as to charge her husband *in a court of law.* How the matter should be viewed in a court of equity is a different question, and one upon which we express no opinion.

Having, therefore, made a provision for the wife, which in a court of law fails to charge the husband, we see no ground upon which the plaintiff in error can insist upon such provision by way of discount or abatement of the damage in the nature of' recoupment. We are aware that, of late years, the courts, in order to avoid circuity of action, have been disposed to extend this doctrine to a very great length, but we think no well considered case has ever pushed it to the extent now contended for.— It is manifest that, if the plaintiff in error is allowed to recoup for the hire and services of the slaves in this action, he would

thus be enabled to do indirectly what the law forbids should be directly done, and we are aware of no principle which will justify this. It is true this bond is a contract to indemnify, but we think this furnishes no reason why we should give effect to a provision which the *law deems invalid*, so as to abate or entirely to defeat the recovery, but must remit the plaintiffs in error to a court of equity to establish their right, if any they have, on account of Mrs. D's use of the slaves. It follows from what we have said, that the court did not err in excluding the proof of the ill treatment of the wife by the plaintiff below, and of the application of the labor and services of the slaves to her support, &c.

7. We come next to consider the legality of the charges given, and those asked and refused by the court, and these may be briefly disposed of. In the first charge, the court instructed the jury that, if they believed the evidence, and believed that the negro slaves had been taken out of the possession of the plaintiff under said writ, and had never been restored to him since they were so taken, and if they further found that the plaintiff was entitled to recover, then the measure of damages was the value of the hire of said negro slaves, from the time they were first seized by the sheriff up to the time of trial, without any interest whatever on such value. It appeared that one of the slaves which had been taken under the process had died before the trial, but at what particular time, is not stated. We see nothing erroneous in this charge, prejudicial to the plaintiff in error. It is quite as favorable to his side, perhaps more so, than the law will warrant. It is clear that the death of one of the slaves does not affect the liability of the plaintiff in error for the hire, if he caused her to be taken from the defendant in error by a wrongful procedure.—5 Stew. & Por. 123; 8 Por. 564; 7 Ala. 807.

8. It was not incumbent on the plaintiff below to prove that the process, under which the slaves were seized, was sued out wrongfully, vexatiously and maliciously, as is supposed by the charge asked, nor was the record which was introduced evidence of itself that all these ingredients existed; but it was not necessary to entitle the plaintiff to a recovery upon the bond for him to show malice in suing out the process. It was sufficient if it was wrongfully sued out to enable him to recover the actual

Zeigler & Hall v. David.

damage he had sustained. Hence there was no error in the charge, which affirmed that it was not incumbent on the plaintiff to prove that it was wrongfully, vexatiously *and* maliciously sued out.

9. The second charge asked assumes, that the process must be shown to have been wrongfully obtained, and that the transcript of the record of the bill of chancery, and its dismissal for want of prosecution, did not show this fact. Although, as we have said, the first portion of this charge was clearly the law, yet, if the last portion of it asserts an illegal proposition, being asked as an entirety, the court was not bound to separate the legal from the illegal, but might properly refuse the whole. Was the transcript proof that the process was *wrongfully* sued out? We are clear, that it raises the *prima facie* presumption that it was, casting the *onus* on the other side to show that it was not. Upon principle, there appears to be nothing unreasonable in holding that a party, who has obtained the property of another by the aid of a court, granted upon allegations which, if true, entitle him to relief, and that aid is withdrawn by a refusal to prosecute his plaint, should, when sued for the property thus taken, be required to show that he had a just ground of complaint, and consequently, that the proceedings which he abandoned were not wrongful. *Prima facie*, he has made " false clamor," and having refused to maintain his suit, he virtually admitted, so far as that prosecution was concerned, that it was without foundation and wrongful. True, it does not conclude the complainant, who may bring another bill for the same cause: (3 Phil. Ev. C. & H. Notes, 926 ;) but, so far as that prosecution is concerned, it has ended adverse to the complainant, and has thus imposed on him the necessity of restoring what he has taken under the proceedings, or showing sufficient reasons why he should not do so. In Crocker & Wife against Bolling, adm'r, at the present term, we had occasion to determine upon the effect of a dismissal of a chancery suit for want of prosecution, as evidence in a suit brought to recover back money which had been received by the complainant in the bill, under a decree which had been reversed; and we there held, that the burthen of proof, showing a right to retain the money, by the reversal of the decree and dismissal of the bill, was cast upon the party who received it. The only difference

between the cases is, that, in this, property was received under an interlocutory order ; in that, money was collected under a final decree which was reversed, and the bill afterwards dismissed for want of prosecution. But, we repeat, the mere dismissal of the bill, even had it been obtained upon a full hearing on the merits, would not establish malice, as was decided in Marshall v. Betner, 17 Ala. Rep. But this is an action on the bond, and no question as to malice is involved as an element of the right to recover.

10. The court was further requested to charge, that the plaintiff could not recover for the value and services of the slaves after the defendants with others gave a new bond, conditioned for the forthcoming of said slaves to abide the final decree, but refused so to instruct. We do not think this forthcoming bond affects in any way the plaintiff's right to recover upon the bond in suit. The giving of this second bond is a part of the proceedings in the cause, incidental to the exhibition of the bill and seizure of the slaves, and whilst it furnishes cumulative security for the forthcoming of the slaves, it in no manner lessens or affects the damages consequent upon the suing out the order of seizure. Moreover, the slaves having been taken from the plaintiff's possession by virtue of the process, to indemnify against the unlawful effects of which the bond in suit was executed, the plaintiff has the right to recover remuneration upon that bond, for the hire of the slaves down to the time of trial, as they had never been restored to his possession. This view also covers the last charge requested, but refused, which sought to limit the recovery for hire to the period preceding the dismissal of the bill. We can perceive no reason for stopping at that point, since the damage is continuous, and is as much the consequence of the improper seizure after the dismissal as before.

After the best consideration which we have been enabled to bestow upon this case, we have been unable to perceive any error in the several rulings of the court, and consequently the judgment must be affirmed.