(78 South. 834)

NATIONAL SURETY CO. v. CITIZENS' LIGHT, HEAT & POWER CO. et al.

(3 Div. 332.)

(Supreme Court of Alabama. April 18, 1918. Rehearing Denied May 30, 1918.)

1. EVIDENCE ⬤⟿323(2) — MARKET VALUE — PROOF.

Although agreements between the parties for the sale of property are not alone evidence of the market value thereof, they are evidence that the property had some market value, and can be considered along with the other evidence, being in the nature of admissions.

2. APPEAL AND ERROR ⬤⟿1047(5)—HARMLESS ERROR—EVIDENCE.

Where documents have been introduced in evidence without objection, a second offer is superfluous, and hence not prejudicial.

3. EVIDENCE ⬤⟿601(4) — MARKET VALUE — WEIGHT.

The fair market value of property is the conclusion of such value by the jury drawn from the evidence, opinion and positive, shedding light thereon.

4. EVIDENCE ⬤⟿113(4) — ADMISSIBILITY — MARKET VALUE.

In action on bond for injunction restraining sale or voting of stock, where plaintiff testified

he was owner of 917 shares when the injunction was issued, and that the reasonable market value was $225 per share, he was properly permitted to testify that after the issuance of the injunction the value of the stock was decreased, and that at the time of the dissolution of the injunction the market value was $35 per share.

**5. APPEAL AND ERROR ⊚⟞1050(1)—HARMLESS ERROR—EVIDENCE.**

In action on injunction bond, where the record of the injunction suit was admitted without objection, showing that two injunctions had been issued, admission of testimony that another injunction besides the one covered by the bond had been issued *held* not prejudicial.

**6. INJUNCTION ⊚⟞248 — ACTION ON BOND — PARTIES.**

All the obligees of an injunction bond were properly made plaintiffs for the use of an obligee who was the real plaintiff.

**7. INJUNCTION ⊚⟞252(2) — DISMISSAL — LIABILITY OF PLAINTIFFS.**

Plaintiffs in injunction suit are liable for at least nominal damages, where the suit is dismissed on the motion of the plaintiffs without prejudice.

**8. INJUNCTION ⊚⟞250 — ACTION ON BOND — PLEADING.**

In an action on a bond, it is sufficient, under Code, § 5382 (form No. 7), to state the legal effect of the agreement, the intention of the parties as it may be collected from the entire instrument, and then state in what respects it has been breached by defendant to plaintiff's damage, and in declaring on an injunction bond it is sufficient to aver that the suit was dismissed, without alleging the cause of the dismissal.

**9. PLEADING ⊚⟞193(8)—DEMURRER.**

Demurrer is not the proper remedy to expunge from a complaint nonrecoverable damages.

**10. INJUNCTION ⊚⟞253—ACTION ON BOND— MISLEADING INSTRUCTIONS.**

Since on dismissal of an injunction suit the obligee in the bond is entitled to at least nominal damages, a requested instruction to return, under certain circumstances, a verdict for defendant, in an action on the bond where an injunction suit was dismissed, was properly refused as misleading.

**11. INJUNCTION ⊚⟞243—BOND—LIABILITY.**

If an injunction against sale or vote of corporate stock so interfered with a large stockholder as to cause a plant to shut down, such stockholder would be entitled to damages for a breach of the bond.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Action by the Citizens' Light, Heat & Power Company and others against the National Surety Company on an injunction bond. Judgment for plaintiffs, and defendant appeals. Affirmed.

The facts sufficiently appear from the opinion. The following charges were refused to defendant:

(7) You should not consider the amount which Doherty & Co. agreed to pay for the stock in question as any evidence of the market value of the property.

(8) You should not consider the amount which Tillis paid or agreed to pay for the stock in question as any evidence of the market value of the stock in question.

(9) I charge you that neither the contract between Rice and Doherty & Co., nor the contract between Rice and Tillis, is any evidence of the market value of the stock involved in this suit.

(10) Neither the contract between Doherty & Co. and Rice, nor the contract between Tillis and Rice, is evidence of the market value of the capital stock of the Citizens' Light, Heat & Power Company, alleged to have been acquired by the said Richard Tillis.

(5) If you believe from the evidence that the depreciation in the value of the stock subsequent to the suing out of the injunction complained of, if there was any such depreciation, was due to the fact that the customers of the Citizens' Light, Heat & Power Company were diverted and supplied by the new plant built by Tillis, and the Citizens' plant had been shut down by reason of it, you should return a verdict for defendant.

(6) There is nothing in the bond sued upon in this case which prevented the Citizens' plant from being operated in the usual and ordinary way, and if you are reasonably satisfied from the evidence that there was any depreciation in the value of the stock in question, and that that depreciation was proximately caused by the shutting down of the Citizens' plant, then I charge you plaintiff cannot recover anything more than nominal damages in this case.

Steiner, Crum & Weil, of Montgomery, for appellant. Rushton, Williams & Crenshaw, of Montgomery, for appellees.

THOMAS, J. The suit was against the National Surety Company for the breach of the condition of an injunction bond made by the defendant as surety for Henry L. Doherty & Co., a partnership composed of Henry L. Doherty and Frank B. Frueauff.

During the year 1910, Doherty & Co. owned an electric light and power plant in Montgomery, and made a contract with Alex Rice to purchase a controlling amount of stock in the electric light and power plant owned and controlled by said Rice, with stipulation to make payment for the same on or before the 15th day of June, of that year. On the 16th day of June, 1910, said Doherty and Frueauff, as partners in trade under the name of Henry L. Doherty & Co., filed their bill in the United States court for the Middle district of Alabama, on the equity side of said court, for specific performance of said contract of sale made with them by said Rice, and for an injunction. A temporary writ was granted by the Honorable United States District Judge in said cause, on the date of the filing of the petition therefor, restraining Rice from transferring, assigning, selling, or disposing of any stock owned or controlled by him in either the Citizens' Light, Heat & Power Company, or the Citizens' Light & Power Company, and from voting any such stock, and from transferring, assigning, disposing of, or voting any trustee's certificate issued on account of said stock and owned or controlled by him, and restraining the said Citizens' Light, Heat & Power Company and the Citizens' Light & Power Company, and each of them, from permitting to be assigned upon the books of the said corporations or of either of them, any of the stock of said corporations, or of either of them, or any trustee's certificates owned or controlled by the said defendant Rice.

On the 18th day of June, 1910, said com-

plainants exhibited their supplemental bill, alleging that Richard Tillis had on the 17th day of June purchased of the said Rice all of the stock owned or controlled by him in the said power company, and averring it to be the identical stock which said Rice had contracted to sell complainants, and alleging that Tillis, at the time of the purchase from Rice of the stock in question, had notice that Rice had contracted to sell and deliver the same to complainants. It is further averred in the supplemental bill that complainants had an equitable right and title to said stock by reason of their contract for its purchase; that such sale, or pretended sale or conveyance, by Rice to Tillis, of his stock, was of no effect as to the property rights theretofore acquired therein by complainants. This supplemental bill alleged the filing of the original bill and the issuance on the 16th day of June of the temporary writ of injunction or restraining order, directed to Alex Rice, the Citizens' Light, Heat & Power Company, and the Citizens' Light & Power Company, defendants in the original bill, enjoining and restraining them as we have above set out. The prayer of the supplemental bill is that Richard Tillis be made a party defendant; that he and defendants in the original bill be required to plead, answer, or demur to the original and supplemental bills; that said sale or pretended sale or conveyance of said stock be vacated and annulled; that said Tillis be compelled to sell and deliver up said stock to the complainants under the terms and conditions of said contract or agreement alleged to have been made by complainants with Rice; and that "meantime the said Tillis, his agents, and attorneys, and any and all persons and parties claiming or pretending to claim from or through him, the said Tillis, be enjoined and restrained from voting, selling, transferring assigning, or pledging, or from attempting to vote, sell, transfer, assign, or pledge or dispose of the said stock or any part thereof, and that the status of said stock be preserved and maintained so that the same may be forthcoming and delivered to your orators on a final hearing of this cause pursuant to such decree as may be therein rendered."

Thereafter, to wit, on August 8, 1910, said Doherty and Frueauff, partners in trade, etc., styled as complainants in the original and supplemental bills theretofore filed in said court, by leave of the court, amended the supplemental bill, alleging the sale by Rice to them of the stock in question, adding other parties respondent, averring more in detail the several transactions relating to said stock on the part of Rice with complainants and with Tillis and the other respondents, making the new parties respondent parties to the original and supplemental bills theretofore filed. This amendment contained an appropriate prayer for compelling Rice to execute his contract of sale with complainants, and that Tillis be required to surrender the stock or certificates evidencing the sale of the

same to him by Rice, and which Rice had previously contracted to sell to complainants— that the status of said property be restored as it existed at the time Tillis acquired said stock. It contained appropriate prayer for injunction against Tillis, Citizens' Light, Heat & Power Company, and Citizens' Light & Power Company, to prevent them or either of them from selling, transferring, assigning, pledging, hypothecating, or voting said stock, etc. There was a further prayer for the appointment of a receiver with power and authority to take possession of, operate, and control the plant and properties of the Citizens' Light, Heat & Power Company, under directions of the court. To this amended supplemental bill there was annexed, as an exhibit, the contract appearing to have been entered into by Alex Rice and Richard Tillis on the 16th day of June, 1910, relative to the purchase of the stock in question.

At the time of the filing of this amendment to the supplemental bill on August 8th, the order and decree of the court was that the petition and motion was granted, "without prejudice to the restraining orders, or any of them heretofore issued in said cause." Pursuant to this order, on August 12, 1910, Henry L. Doherty & Co., as principals, and National Surety Company, as surety, gave to Alex Rice, Citizens' Light, Heat & Power Company, and Citizens' Light & Power Company, and Richard Tillis, defendants in the original bill and first supplemental bill, a bond in the penal sum of $2,000, conditioned on the order of the judge of the District Court enjoining the said defendants, their and each of their agents, officers, attorneys, and employés, from selling, assigning, pledging, disposing of, or parting with the possession of, and from voting, any of the stock or any of the trustee's certificates which were owned and controlled by the said Alex Rice at the time of the making of the contract with him and the complainants in the original bill set forth, or any stock or trustee's certificates issued in lieu thereof, pending the final hearing of this cause; the obligors therein agreeing to pay to the said defendants named in said bond "all such costs or damages as they or either of them may sustain by reason of the issuance of said order, if it shall appear that said order was wrongfully made," etc. The writ of injunction issued in pursuance of this order and bond. On the 11th day of January, 1915, on the petition of Doherty and Frueauff, as partners, etc., praying that "the bill will stand dismissed without prejudice," the court granted the prayer and motion of petitioners and dismissed their bill in said cause "without prejudice at the cost of the complainants."

On the trial of the instant case plaintiffs introduced the files of the United States District Court in equity in said cause with its exhibits, the contracts between Doherty & Co. and Rice, and the supplemental bill with its exhibits, the contract between Rice and

Tillis. This evidence, including said exhibit contracts, was admitted without objection before any witnesses were examined ore tenus. Plaintiffs then introduced as a witness Mr. Whiting, who, after being examined as to the market value of the stock in question, was asked by plaintiffs if said Doherty & Co. made any offer of purchase for the trustee's certificates, or stock, and if so, what the offer was. Counsel for the defendant asked the witness if the offer referred to was in writing, and witness replied that it was; his answer being that "It was a written agreement." Thereupon counsel for the plaintiffs offered in evidence a written agreement between H. L. Doherty & Co. and Alex Rice; it being in two separate instruments, and being the agreement made and entered into on the 13th day of May, 1910, between Alex Rice and Henry L. Doherty & Co., and attached as exhibits to the original bill and so offered in evidence.

[1, 2] The defendant objected to the introduction of the agreements on the grounds that said paper writings did not tend to fix the market value of the stock or certificates in controversy, and constituted a mere personal agreement between the parties, containing mutual covenants and stipulations. The court permitted the agreements to be read in evidence, and to this action of the court exception was duly reserved by the defendant.

It will be noted that said agreements were in evidence, having been introduced without objection as a part of the proceedings by Doherty & Co. against Rice, Tillis, and others in the United States court, and as exhibits. Said agreements, taken alone, containing as they do other mutual covenants and stipulations, would not establish the fair market value of the stock or certificates in controversy; yet they were agreements in the nature of admissions on the part of Doherty & Co. that said certificates or stock were of some value, or had a market value. Pope v. Randolph, 13 Ala. 215; Grand Rapids v. Luce, 92 Mich. 92, 52 N. W. 635; Sullivan v. Railroad Co., 29 Tex. Civ. App. 429, 68 S. W. 745. The authorities are collected in 16 Cyc. 1136, note 73, to the effect that the price paid for an outstanding title or incumbrance on land, taken alone, is not evidence of the fair market value of the thing purchased, but that it is evidence that the same was of some value. B. R., L. & P. Co. v. Humphries, 172 Ala. 495, 55 South. 307; Anderson v. Knox, 20 Ala. 156. When, however, such evidence is considered in connection with other evidence of fair market value, it has a logical bearing. Such is the rule in Iowa, Maryland, New York, Tennessee, Vermont, and Wyoming. In Ferguson v. Clifford, 37 N. H. 86, 105, it was declared that between persons at liberty to contract on equal terms, agreement on a price not only operated to affect the parties contractually, but constituted some evidence of value; that

is to say, that the property purchased had a market value. When the evidence of some market value of the stock or certificates made the subject of the litigation on which the injunction issued is considered with the testimony of Whiting and Tillis tending to show its fair market value, the contract in question became relevant. However, each of these documents, as we have noted, had already been introduced in evidence without objection, and the second offer thereof was superfluous.

[3] This court has held that evidence of value is necessarily opinion evidence, and that it is not conclusive on courts and juries even when without conflict. Andrews v. Frierson, 144 Ala. 470, 39 South. 512; Sellers v. Knight, 185 Ala. 96, 64 South. 329. It follows that the fair market value of the property in controversy is the conclusion of such value by the jury drawn from the evidence, opinion and positive, shedding light thereon. Opinion evidence of a fair market value cannot be said to be the only evidence admissible to prove such value. Hadley v. Board, etc., Passaic County, 73 N. J. Law, 197, 62 Atl. 1132; Concord R. Co. v. Greely Co., 23 N. H. 237, 242; Patterson v. Broom Co., 3 Dill. 465, Fed. Cas. No. 10,829.

In Steiner Brothers & Co. v. Tranum, 98 Ala. 315, 13 South. 365, where personal property was sold at a forced public sale under a mortgage, it was held to be an unsafe rule to permit such price "to be considered as evidence of its value," meaning, of course, fair market value. The decision in T. C. I. & R. R. Co. v. State, 141 Ala. 103, 37 South. 433, was to no other effect than that evidence of a mere offer to buy similar adjacent lands at a given price should not have been received to show the value of the lands in question at the time the offer was made, for it amounted only to the intention of the person "to bid a certain amount for the property, the value of which was in issue." In an action on an implied contract to pay for cross-ties belonging to the plaintiff, what the defendant agreed to pay another person under a special contract for other cross-ties was held not to be proof of the value of plaintiff's cross-ties on which the action was based. A. G. S. R. R. Co. v. Moore, 109 Ala. 393, 397, 19 South. 804. These three cases are distinguishable from the case at bar, where the issue was the breach of the injunction bond by failure to maintain the suit in which the same was issued, and the resulting damage to the plaintiff by the wrongful issue of the injunction.

[4] The plaintiff Tillis, as a witness in his own behalf, testified that the stock or certificates in question had a market value at the time of the issuance of the injunction; that he was the owner of 917 shares thereof; and that the reasonable market value per share thereof, less the indebtedness, was $225. He was then properly permitted to answer, over defendant's objection, that after the injunction issued the market value of

said stock was not enhanced, but was decreased, and "at the time of the dissolution of the injunction, January, 1915, the reasonable market value of that stock or those certificates was about $25 or $35 per share." This evidence was competent as tending to shed light upon the witness' estimate or knowledge of the fair market value of the stock, and as affording basis for the jury to say whether or not the large depreciation in its market value was caused by the wrongful issue of the injunction, or by other factors not embraced within the conditions of the contract covered by the injunction bond. The opinion evidence of the market value, given by the witness, was supported by other competent evidence tending to prove the fair market value, and from this entire phase the jury could draw a correct and just conclusion of such market value.

[5] The plaintiffs' question to Whiting, "After this injunction was sued out, was there still another injunction issued?" elicited the answer, "Yes; there was another injunction." This evidence was only cumulative upon other evidence, shown by the record to have been introduced without objection, that more than one injunction or temporary restraining order was issued in the equity suit in question pending in the United States court. After an examination of the entire record, we cannot hold that there was reversible error in this ruling of the court.

[6] That the action was properly brought in the names of all the obligees of the injunction bond, for the use of the real plaintiff, Richard Tillis, is upheld by the authorities collected in Alabama Power Co. v. Hamilton, 77 South. 356;[1] Smith v. Mutual Loan & Trust Co., 102 Ala. 282, 14 South. 625.

[7] In the instant case, the complainants in the injunction suits procured the granting of the order of dismissal or discontinuance of the action. It has generally been held that the legal effect of such dismissal of the main suit and vacation of the order granting the injunction is the equivalent of the determination of the fact of liability under the injunction bond; that is, that the party procuring the issuance of the writ of injunction was not entitled thereto, and that liability on the part of the obligors, according to the terms of the bond, is by the fact of its dismissal admitted. Hathorn v. North Caro. Gas Co., 163 App. Div. 768, 149 N. Y. Supp. 176; Pacific Mail Steamship Co. v. Toel, 85 N. Y. 646; Wynkoop v. Van Beuren, 63 Hun, 500, 18 N. Y. Supp. 557; Mica Ins. Co. v. Comm. Mica Co. (C. C.) 157 Fed. 92; Tullock v. Mulvane, 184 U. S. 497, 22 Sup. Ct. 372, 46 L. Ed. 657; Kimm v. Steketee, 44 Mich. 527, 7 N. W. 237. So much for general authorities as to liability under the terms of the bond where the case in which the injunction was granted is dismissed at the complainant's instance.

Our court has reached a like conclusion. In Mayor & Aldermen of East Lake v. De

Vore, 169 Ala. 237, 53 South. 1018, it was declared that where, on the complainant's motion, a bill for injunction is dismissed, the injunction is thereby dissolved and, the conditions of the bond being breached, the right of action on the bond arises. To like effect was the decision by Chief Justice McClellan in Bush v. Kirkbride, 131 Ala. 405, 30 South. 780. The Chief Justice said:

"And it is contended that the injunction having fully performed its office, according to the prayer of the bill and its own terms, it no longer existed for any purpose and could not be and was not and can never be dissolved. The position is without merit. In this country the prevailing doctrine is that notwithstanding the time within which the writ is operative has lapsed, the injunction continues to legally exist until it is dissolved by the court. The injunction in this case did not simply pass out of existence upon the expiration of the time of its operation, but it was dissolved by the subsequent dismissal of his bill by the complainant." Zeigler v. David, 23 Ala. 127; Bogacki v. Welch, 94 Ala. 429, 10 South. 330; Babcock v. Reeves, 149 Ala. 665, 43 South. 21; Town of Dadeville v. Wynn, 14 Ala. App. 418, 70 South. 197; 16 Am. & Eng. Ency. Law, 456.

Where the dismissal was "without prejudice," an action lies upon the undertaking. Yale v. Baum, 70 Miss. 225, 11 South. 879; Mitchell v. Sullivan, 30 Kan. 231, 1 Pac. 518.

[8] In an action on a bond, it is sufficient generally to assign a breach in the words of the condition and negative the performance of the undertaking. It is not necessary to use the precise terms of the obligation. Code, § 5382 (form No. 7); Kirby v. Forbes, 141 Ala. 294, 299, 37 South. 411; Baker v. Pope, 49 Ala. 415, 418; Pryor v. Beck, 21 Ala. 393; Chitty on Plead., 332 et seq.; Gould's Pl. (Will's) 228. It is sufficient to state the legal effect of the agreement, the intention of the parties as it may be collected from the entire instrument, and then state in what respects it has been breached by defendant to plaintiff's damage. Watt's Ex'x v. Sheppard, 2 Ala. 425, 432. In short, a breach must be so assigned as to show that the contract obligation has been broken, and that the plaintiff has a cause of action. Stearnes v. Edmonds, 189 Ala. 487, 491, 66 South. 714. It follows that in declaring on an injunction bond it is sufficient to aver that the suit was dismissed, without alleging the cause of the dismissal. Babcock v. Reeves, supra; Zeigler v. David, supra. Chief Justice Chilton said in the Zeigler Case:

"The next objection is that the declaration fails to aver that the bill was dismissed upon the merits, or that the defendants in the court below had notice of such dismissal. We think it altogether sufficient to aver that the bill was dismissed generally, without stating the ground of the dismissal. It amounts to a final disposition of the cause, adverse to the complainant, and entitled the defendant in the chancery suit to recover upon the bond such damages as he had wrongfully sustained by its exhibition and obtaining the process prayed for."

In the Babcock Case, Chief Justice Anderson observed that the complaint averred that the bill was dismissed and the injunction was

---

[1] Ante, p. 62.

dissolved. "This was a sufficient averment of a breach." Thus in effect was modified Dunn v. Davis, 37 Ala. 95, even if applicable. This rule is supported by the text, and the authorities collected by Mr. High, in his work on Injunctions (4th Ed.) §§ 1476, 1649A, and by 22 Cyc. 1028, note 41; 27 Cent. Dig. § 534.

[9] Demurrer is not the proper remedy to expunge from a complaint nonrecoverable damages. Ala. Power Co. v. Hamilton, supra; Pryor v. Beck, supra; B. R., L. & P. Co. v. Oden, 146 Ala. 495, 503, 41 South. 129; A. & B. A. L. Ry. Co. v. Wood, 160 Ala. 657, 49 South. 426; Cassells' Mills v. Strater Bros. Grain Co., 166 Ala. 274, 282, 51 South. 969. The trial court committed no error in overruling the demurrer to the complaint.

There was no error in the refusal of the defendant's requested charges 7, 8, 9, and 10. The evidence sought to be limited by these charges could be considered in connection with the evidence tending to show the fair market value of the stock or certificates. The affirmative charges requested by defendant were properly refused, and the affirmative charge for the plaintiffs was properly given. The amount of the damages sustained by plaintiffs through the failure to successfully maintain the suit for injunction was properly submitted to the jury.

[10] Charge 5 was misleading, in that plaintiffs were entitled to recover nominal damages on the dismissal of the suit and the dissolution of the injunction against Tillis.

[11] There was no error in refusing charge 6, though the depreciation in the value of the stock in question was proximately caused by "shutting down" the Citizens' plant; yet if the issuance of the injunction was so wrongful, and so interfered with Tillis in the operation of the plant, by rendering him unable to use, pledge, or vote his stock, as to cause him to shut down the plant, there would be liability for a breach of the injunction bond; and it became a jury question as to the amount of damages sustained by him in the wrongful issue of the injunction.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.