# Gayle's Adm'r *v.* Marshall.

*Bill in Equity to establish and enforce Vendor's Lien on Land.*

1. *Payment by husband, of debts against wife's statutory estate.*—As trustee of the wife's statutory estate, the husband has authority, and it is his duty, to pay debts and liabilties resting on it; and whether he applies the rents and income only, or the *corpus* of the property, to the payment of such debts, her assent and concurrence are not necessary to the validity of the payment; nor does her dissent, however openly and

[Gayle's Adm'r v. Marshall.]

frequently expressed, lessen his authority and duty, or invalidate the payment.

2. *Liability of wife's statutory estate for necessaries.*—A debt contracted by the wife, for articles of comfort and support of the household, suitable to the degree and condition in life of the family, and applied to their uses, is not necessarily a charge on her statutory estate (Code, § 2711); it must be further shown that the goods were furnished under such circumstances as would create a liability against the husband at common law.

3. *Same.*—If the goods were purchased by the wife, without the assent or knowledge of the husband, and the credit was given exclusively to the wife, her statutory estate would not be liable, since the husband would not be liable at common law; but his known insolvency, and the fact that the goods were charged on the merchant's books to the wife, do not exclude the husband's common-law liability, nor exonerate the wife's statutory estate, when the facts show, as here, that the parties clearly intended to make such a contract as the law declares to be a charge against the statutory estate.

APPEALS from the Chancery Court of Dallas.

Heard before the Hon. CHARLES TURNER.

The original bill in this case was filed on the 28th June, 1879, by Anna M. Gayle, as the administratrix *de bonis non* of the estate of Mrs. Mary L. Gayle, deceased, against Charles L. Marshall, William B. Shields, and William M. Martin; and sought to establish and enforce a vendor's lien against a tract of land, on account of the balance of purchase-money alleged to be due and unpaid. The lands had belonged to the complainant's intestate, having been inherited in 1863 from her father; and were sold and conveyed, on 13th October, 1871, by her and her husband, Reese D. Gayle, to said Marshall, at the price of $7,000; of which sum, $4,000 was paid in cash, and for the residue the purchaser gave his two notes, of $1,500 each, payable one and two years after date, with interest. These notes expressed on their face that they were secured by a vendor's lien on the land; were made payable to Milhous & Shields, a mercantile partnership, of which said W. B. Shields was a partner, and were delivered to said partnership by said Reese D. Gayle. Whether this was done with the knowledge and assent of Mrs. Gayle, was a disputed question in the court below; but the decision of this court, holding it immaterial, renders it unnecessary to state the facts bearing on that question. The notes were taken and received by said Milhous & Shields, in payment of an account which they held against Mrs. Gayle, or against her and her husband, for goods sold and delivered, and supplies furnished them in person, or on written orders, during the years 1869–70, which were charged on their books to Mrs. Gayle; and they receipted the account, and paid a balance of about $200, the difference between the amount of their account and the notes, to Mrs. Gayle, or to her husband for her. On the dissolution of the firm of Milhous & Shields, the notes be-

[Gayle's Adm'r v. Marshall.]

came the property of said William B. Shields, and they were paid to him by Marshall; the first being paid in October, 1872, and the second in October, 1878, under execution on a judgment which Shields had recovered against him on it. The bill alleged, that Mrs. Gayle never assented to the transfer of the notes to Milhous & Shields, but expressly dissented from it; that Marshall and Shields had notice and knowledge of her rights, and could not destroy or impair her lien on the land by making and receiving payment of the notes as between themselves. Marshall was put in possession of the lands under his purchase, and afterwards mortgaged them to said William M. Martin; and said Martin was made a defendant on account of his interest as mortgagee, the bill alleging that he was chargeable with notice of the rights asserted by the bill.

Mrs. Gayle and her husband removed to Mobile soon after selling the land to Marshall, and she there died in December, 1871. Letters of administration on her estate were duly granted, in March, 1872, to William Miller; and he having resigned the administration on the 10th May, 1873, there was a vacancy in the administration until June 24th, 1875, when letters of administration *de bonis non* were granted to B. O. James. On the 22d December, 1876, the last will and and testament of Mrs. Gayle was duly admitted to probate in Mobile county; and in June, 1877, letters of administration with the will annexed were granted to said B. O. James. In March, 1879, James resigned the administration, and letters were thereupon duly granted to the complainant in this suit. By her last will and testament, Mrs. Gayle bequeathed all of her property to her children. In August, 1874, before the probate of the will, and while there was a vacancy in the administration, Mrs. Gayle's children, claiming as her heirs at law and distributees of her estate, filed a bill in equity against said Marshall and Shields, seeking to enforce a vendor's lien on the land, on account of the matters now claimed in this suit; but their bill was dismissed by this court, on appeal, because the surviving husband and the administrator of Mrs. Gayle's estate were not made parties to the suit, the dismissal being "without prejudice to the bringing of another suit about the same matter".—*Marshall v. Gayle*, 58 Ala. 284. The bill in this case was filed after that decree of dismissal. A cross-bill was filed by Marshall, asking for a personal decree against Shields for the amount paid him on the notes, if the complainant should be held entitled to a decree against him on account of the notes.

On final hearing, on pleadings and proof, the chancellor held that Marshall was not liable for the first note, because he paid it without notice of any claim asserted by Mrs. Gayle; but that he was liable to the extent of the amount paid on the second

note, under the judgment and execution in favor of Shields, because he had notice of the rights asserted by the bill, and might have protected himself against the judgment. He therefore rendered a decree in favor of the complainant, declaring a lien on the land for the amount of the second note and interest thereon, $2,576.33, and ordering a sale of the land for its satisfaction; and also, under the prayer of the cross-bill, a personal decree for the same amount, in favor of Marshall, and against Shields.

From this decree each party appeals, and here assigns errors; the complainant below, that part of the decree which refused to declare a lien on account of the first note, and several rulings of the chancellor on objections to evidence, which require no notice; and Marshall, that part of the decree which declared a lien as to the second note.

W. R. NELSON, and BROOKS & ROY, for the complainant, made the following points : (1.) That a vendor's lien on the lands was retained on the face of the notes, and was never waived or abandoned by Mrs. Gayle. (2.) That Mrs. Gayle never assented to the transaction between her husband and Milhous & Shields, by which the notes of Marshall were made payable to the latter, and were delivered to them by her husband, but expressed her dissent so soon as the facts came to her knowledge. (3.) That her assent or dissent was immaterial, since the notes belonged to the *corpus* of her statutory estate, and could only be disposed of by writing signed by her and her husband, duly attested or acknowledged.—*Reeves v. Linam,* 57 Ala. 564; *Smythe v. Oliver,* 31 Ala. 39; *Drake v. Glover,* 30 Ala. 382; *Whitman v. Abernathy,* 33 Ala. 154; *Canty v. Sanderford,* 37 Ala. 92; *Alexander v. Saulsbury,* 37 Ala. 376; *Warfield v. Ravisies,* 38 Ala. 521; *Mitchell v. Dillard & Jones,* 57 Ala. 321; *Gilbert v. Dupree's Adm'r,* 63 Ala. 331. (4.) That the account of Milhous & Shields, or the greater part of it, on account of which the notes of Marshall were delivered to them, was not for necessaries, such as the wife's estate is made chargeable with by statute.—*Eskridge v. Gill,* 51 Ala. 254; *Gilbert v. Dupree's Adm'r,* 63 Ala. 331; *Bradley & Wife v. Murray,* 66 Ala. 269. (5.) Even as to the articles which were necessaries suitable to the degree and condition in life of the family, Mrs. Gayle's statutory estate could not be charged with their payment, because the credit was given exclusively to her, as shown by the fact that they were charged to her alone on the books of Milhous & Shields, and it was known that her husband was insolvent.—*O'Connor v. Chamberlain,* 59 Ala. 431; *Pearson v. Darrington,* 32 Ala. 227.

[Gayle's Adm'r v. Marshall.]

SATTERFIELD & YOUNG, for Marshall.—(1.)  If any vendor's lien was reserved, it certainly was not in favor of Mrs. Gayle or her husband, who incurred no personal liability on the negotiable notes which they had made payable to Milhous & Shields, and which were paid to the holder thereof.   (2.)   The contract of sale was entire and indivisible, and Mrs. Gayle was fully informed of all parts of the transaction; and having received the $4,000 paid in cash, and the balance of $200 from Milhous & Shields after payment of their debt, she can not repudiate the other part of the contract.   (3.)   Mrs. Gayle recognized the validity of the debt due to Milhous & Shields, and was anxious to make the contract in order that their debt might be paid; and it was paid with her assent and concurrence, as stipulated. (4.)   The debt being a charge against her statutory estate, the husband might lawfully pay it, with or without her assent. *Castleman v. Jeffries*, 60 Ala. 380.   (5.)   All the facts show that, in the creation of the debt, the parties contemplated and intended to create a statutory charge against the wife's estate; and their intention and purpose to do a lawful act can not render the act ineffectual and nugatory.   The known insolvency of the husband, and charging the goods against Mrs. Gayle, are only circumstances to be explained, and which are fully explained.   (6.)The bill alleged that the debt due to Milhous & Shields was the individual debt of R. D. Gayle; and the complainant can not be heard to dispute his liability, in order to make out her claim to relief on another ground.

BRICKELL, C. J.—These are cross appeals from a decree in chancery, rendered on a bill filed by Anna M. Gayle, as administratrix *de bonis non* of the estate of Mary L. Gayle, asserting a lien on lands for the payment of the purchase-money. The lands were sold by Mrs. Gayle and her husband, and a conveyance executed to Marshall, the purchaser.   The larger part of the purchase-money was paid in cash, at the time of the conveyance; and for the remainder, Marshall, at the request of the husband, made his two promissory notes, of fifteen hundred dollars each, payable to Milhous & Shields, to whom Mrs. Gayle was indebted.   These notes were delivered to Milhous & Shields, and accepted by them in payment of the debt of Mrs. Gayle.   The lands were the statutory separate estate of Mrs. Gayle; and the question of chief importance the cases present is, whether her estate was liable for the debt, to the payment of which the notes were applied.   If her statutory separate estate was liable for the debt, the disputed question of fact, whether she assented to the application of the notes to the payment of the debt, becomes immaterial as it is probably in any aspect of the case.

The husband, the trustee of the estate, caused the notes to be made payable to Milhous & Shields, and applied them to the payment of the debt.  As trustee, it was not only within the scope of his authority, but it was a duty, to pay and satisfy all liabilities resting upon the estate.  It is not essential that the wife should assent to, and concur in the application of either the rents, profits, or income, or the *corpus* of the statutory separate estate, to the discharge of such liabilities; nor will her dissent, however openly and frequently expressed, lessen the duty and authority of the husband.—*Castleman v. Jeffries*, 60 Ala. 380; *Lee v. Tannebaum*, 62 Ala. 501.

It is shown satisfactorily, that the debt to Milhous & Shields was contracted for articles of comfort and support of the household, suitable to the degree and condition in life of the family, and applied to their uses.  This, of itself, will not fasten a liability on the wife's statutory separate estate, though she may be the active agent in making the contract.  Concurring with it, there must exist the common-law responsibility of the husband for necessaries supplied to the wife.  At common law, a married woman was incapable of contracting.  The incapacity was general and absolute; not arising from a want of discretion imputed to her, as it is imputed to infants, but because she had entered into an indissoluble connection, by which she was placed under the power and protection of the husband, and was deprived of the administration of property.  Not even for necessaries could she bind herself.  The observation of Lord BROUGHAM in *Murray v. Barlee*, 3 Myl. & Keene, 209, has been more than once quoted in this court: "That at law a *femme covert* can not in any way be sued, even for necessaries, is certain.  Bind herself or her husband, by specialty, she can not; and although living with him, and not allowed necessaries, or absent from him, whether on an insufficient or an unpaid allowance, she may so far bind him, that those who furnish her with articles of subsistence may sue him; yet, even in respect of them, she herself is free from all suit.  This is her position of disability, or immunity at law: and this is now clearly settled.  Her separate existence is not contemplated: it is merged by the coverture in that of the husband."  The disability or immunity was not peculiar to courts of law.  Courts of equity recognized it, unless there was property given or settled to the separate use of the wife, in reference to which she could contract, or which, as an incident of ownership, she could bind.

The statutes enlarge the capacity of married women to take and hold property, without enlarging, or, rather, avoiding the enlargement of their capacity to contract.  The obvious purpose and policy is to *disable* the husband, not to *enable* the wife—depriving him of the rights which at common law would de-

volve on him, in and to the property and rights of property of the wife, had at the time of the marriage, or during its continuance accruing to her. The statutory separate estate of the wife is not charged with liability for articles of comfort and support of the household, because the wife contracts for them: her capacity to contract for them is not greater, or other, than was her capacity to contract for necessaries at common law.. The estate is charged with a liability for the contract, because of its particular consideration, and because it was made by either husband or wife, under facts and circumstances which, at common law, would have charged the husband, personally and exclusively, for its payment. It is this responsibility of the husband, not created by the statute, but derived from and dependent on the common law, to which the statute refers, making it an indispensable element of the liability of the statutory separate estate.—*Durden v. McWilliams*, 31 Ala. 438; *Ravisies v. Stoddart*, 32 Ala. 599; *Eskridge v. Ditmars*, 51 Ala. 245; *O'Connor v. Chamberlain*, 57 Ala. 431; *Lee v. Campbell*, 61 Ala. 12.

The duty of the husband, at common law, was to maintain the wife. From this duty springs the responsibility to which the statute refers. The husband was at common law, and is yet, presumed to assent to, and authorize the wife, on his credit, to purchase necessaries for the use of the family; and her contracts, of which these are the consideration, bind him. From such contracts he may dissent, or may even forbid them; yet, if the fact is that he has not supplied the wants and necessities of the household—if he has neglected the duty of maintenance—a stranger, furnishing the wife, can hold him liable. *Hughes v. Chadwick*, 6 Ala. 651; *Zeigler v. David*, 23 Ala. 127; *Pearson v. Darrington*, 32 Ala. 227; *Durden v. McWilliams*, 31 Ala. 438; *Eskridge v. Ditmars*, 51 Ala. 245; *O'Connor v. Chamberlain*, 59 Ala. 438. But, though the wife may be living with, or separately from the husband, if, on her own credit, and to the express exclusion of the credit of the husband, she obtains necessaries, the husband is not liable. *Pearson v. Darrington, supra; O'Connor v. Chamberlain, supra.*

The point of contention is, whether this contract was not made solely on the credit of the wife,—to the express exclusion of the credit of the husband. There is, and can be, no doubt that it was not expected the husband would pay the debt, and that credit was extended because of the liability it was supposed would attach to the statutory separate estate of the wife. The husband was known to be insolvent, and unable to maintain the family suitably to their degree and condition in life, and to the degree of the wife's statutory separate estate.

[Gayle's Adm'r v. Marshall.]

It is a matter of fact, whether, in a particular case, credit be given to the wife alone—whether she was dealt with on her own account solely, to the exclusion of the credit of the husband; or whether, though she alone was active in making the contract, the circumstances show that the husband is bound, because of his assent to, or because of his ratification of the contract. To the statute, full effect can not be given—it can not be made to subserve the beneficial purpose of securing maintenance to the wife and family—unless, in all cases, there is careful inquiry, whether there was an intention, on the part of those supplying the necessities of the family, to exclude the credit of the husband entirely—not merely an absence of dealing on his credit exclusively, as the dealing must have been at common law, to have imparted validity to the contract. It must often be true, that the husband is without credit, unable to provide for the family according to their station in life, and the degree of the wife' fortune. Those supplying necessaries may be unwilling to extend credit to him alone, because of his known inability to pay, and may extend it to the wife, looking to her statutory estate for payment. It is the liability of the statutory estate for which the parties are contracting; and whenever it is shown that the dealing was with the knowledge and consent of the husband, it does not fall within this exception to the liability of the husband at common law, for necessaries supplied the wife and family.

The precise nature, character, and extent of the exception to the common-law liability of the husband, for goods supplied to the wife on her own credit, will be best ascertained from an examination of the cases in which it has been invoked. The English cases generally referred to in the text-books, are *Metcalfe v. Shaw,* 3 Camp. 22; *Bentley v. Griffin,* 5 Taunton, 556; *Petty v. Anderson,* 2 Car. & Payne, 38; *West v. Wheeler,* 2 Carr. & Kir. 714; *Freestone v. Butcher,* 9 Carr. & Payne, 643. In the first of these cases, wearing apparel was supplied to a married woman, in quantities unsuitable to her husband's fortune, and to his degree in life, and without his knowledge, for which credit was given the wife alone, and her promissory note taken. Lord ELLENBOROUGH held that the husband was not liable, "on this plain ground, that the goods were not supplied on his credit, and the plaintiff looked to the wife only for payment." In *Bentley v. Griffin,* goods were sold to the wife, who was debited with them on the books of the plaintiff. She had said to one of the plaintiffs, in the presence of her husband, that "her husband never paid her bills, she always paid her own;" and when some of the goods were sent to her house, she had directed a servant to put them away, that her husband might not see them. The general liability of the hus-

34

band was repelled by the circumstances showing that credit was given to the wife alone. In *Petty v. Anderson*, husband and wife were living together, and in the wife's name carried on business, making purchases in her name. The husband, consenting to the dealings of the wife, and sharing in the profits, was held liable, though the bills of parcels were headed in the name of the wife only. Best, C. J., said: "Can any thing repel the inference of the husband's assent, when every meal he eats, and the bed he sleeps upon every night, are furnished by the profits of the business." In *West v. Wheeler*, the wife had borrowed money; and, after her death, the husband had promised to repay it, *when convenient to him, but stating that he had not been privy to the loan.* The court ruled, that the evidence must go to the jury, who would determine whether the husband authorized the wife to borrow the money, or, having knowledge of the loan, had assented to it. In *Freestone v. Butcher*, Lord Abinger said: "If it appears that the wife had a separate estate, and the trading is done with, and credit given to her, on the faith of that separate estate, and not to the husband; if the wife was dealing in fact, not as the agent of the husband, but in her own right, and in reference to her separate estate, and the credit was given to her, and not to the husband, and the party intended to charge her, and not the husband,—then the husband is not liable for the contracts so made." The wife had a separate estate, which she could charge by her contracts without the concurrence of the husband.

There are cases in this country, in which this question has been considered. In *Shelton v. Pendleton*, 18 Conn. 417, it was held that the liability of the husband, for the contracts of the wife, was by reason of his assent to, or approval of them; or, because the law of marriage imposes on him the duty of supplying her with necessaries; but, when credit is given the wife alone, all presumption of a contract, binding the husband, was repelled. The facts of the case were, that the wife had employed solicitors to prosecute a suit for divorce, in opposition to the wishes and interests of the husband. In *Moore v. Forgartie*, 2 Hill (S. C.), 335, the husband had directed the wife not to contract debts, and had furnished her money; without his knowledge, she made purchases of goods, giving her own note for them; and it was held, the husband was not liable. In *Day v. Burnham*, 36 Verm. 39, the wife made purchases of necessaries from a merchant, requesting him not to call on her husband for payment, and, from time to time, she made payments on the account; finally, she became sick, and the husband, being called on for payment, promised that he would settle the account, though he knew nothing about it. The

[Gayle's Adm'r v. Marshall.]

promise was held a ratification of the wife's contract, rendering the husband liable.  In our own case of *Pearson v. Darrington, supra*, the wife was living separate from the husband, on an insufficient allowance, and, without the knowledge of the husband, made purchases of necessaries, on her own credit, to which he never assented.

In all the cases, in which the husband is relieved from liability for necessaries, because purchased by the wife on her own, and to the exclusion of his credit, there will be found the absence of knowledge, on his part, of the contract when it was made, or of subsequent assent to, and ratification of it; or, that the wife had a separate estate, in reference to which the contract was made, and which she had capacity to charge. The facts of this case are, that the debt was contracted with the full knowledge and assent of the husband, many of the purchases being made on orders drawn by him.  From the dealings with Milhous & Shields, the family were supplied, without dissent on his part; and "the law will not presume so much ill" of him, as that he did not consent to be bound for the food and raiment which were supplied wife and children, and for which he would doubtless have paid, promptly and cheerfully, if his ability had been equal to his will.  It was not in expectation that he would or could pay, that credit was given.  But the facts and circumstances create a common-law responsibility upon him to make payment, and this is the element of the liability of the statutory separate estate.  True, the accounts were all kept in the name of, and against Mrs. Gayle, as the debtor.  That is a circumstance tending to show credit was extended to her only.  It is no more than a circumstance, capable of explanation by all the circumstances.—*Sanford v. Howard*, 29 Ala. 684.  It is from these combined the real nature of the transaction must be ascertained.  These indicate, very clearly, that husband and wife, and Milhous & Shields, intended the making of a contract of the precise character which the statute declares a charge on the wife's statutory separate estate.  The notes of Marshall, for the purchase-money of the lands, were properly applied in payment of the debt, a charge upon the statutory separate estate.

The result is, on the appeal by Marshall, the decree of the chancellor is reversed, and a decree here rendered, dismissing the original bill, at the costs of the appellee as administratrix *de bonis non*, in this court, and in the court below.  The cross-bill of Marshall must be dismissed at his costs.  On the appeal by Anna M. Gayle, as administratrix, the decree must be affirmed.