# Sellers *v.* Knight, *et al.*

*Bill to Cancel Certain Conveyances.*

(Decided November 27, 1913. Rehearing denied February 5, 1914. 64 South. 329.)

1. *Contracts; Validity; Assent.*—Drunkenness does not create such incapacity in law as will render the contract wholly void; the party intoxicated at the time of the making of the contract may rescind on that ground if the intoxication is sufficient, but the contract is only voidable, and he may affirm as well.

2. *Deeds; Validity; Presumption.*—A presumption of fraud arises where one enfeebled in mind by the excessive use of intoxicants executes a deed for an insufficient consideration, and such presumption must be overcome by evidence of fair and honest dealing on the part of him who asserts the validity of such deed.

3. *Same; Burden of Proof.*—One seeking to set aside deeds on account of insufficiency of consideration and intoxication at the time of the execution thereof has the burden of proof.

4. *Same; Consideration.*—The evidence examined and held not sufficient to show that a fair consideration was not given.

5. *Same; Validity; Ratification.*—The evidence examined and held to show that if the deed was obtained from the grantor while intoxicated, that it was afterwards ratified as a conveyance by him.

6. *Same; Consideration; Payment.*—A conveyance cannot be cancelled because the consideration for the conveyance has not been paid.

7. *Same; Vacation.*—Where the grantor has a fair understanding, and his act is not the result of duress or fraud, the court will not set aside a conveyance because the bargain was rash or improvident.

8. *Attorney and Client; Relationship.*—The good faith of an attorney in giving an opinion on the validity of a title to land cannot be impeached by a mistake or error of judgment, either as to the law or as to its applicability to the facts in hand.

9. *Evidence; Opinion; Value.*—Evidence as to the value of land is necessarily a matter of opinion, and is not conclusive on courts or juries, even when without conflict.

10. *Champerty and Maintenance; Contracts; Validity.*—Deeds will not be cancelled on the ground that they were given in consideration of a champertous contract where such deeds have been fully executed.

11. *Equity; Cross Bill; Independent Relief.*—Where complainant was denied relief, defendants who filed cross bill setting up merely defensive matter, but showing no independent equity, were not entitled to affirmative relief.

[Sellers v. Knight, et al.]

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H BENNERS.

Bill by J. T. Sellers against John F. Knight and others, to cancel certain conveyances, and re-invest title in complainant. From a decree denying relief complainant appeals. Affirmed.

C. B. POWELL, for appellant. The answers of defendants Patrick and Webber are mere general denials and do not put in issue the allegations of the bill.—*Shiff & Sons v. Andress*, 40 South. 824; *Prestige v. Wallace*, 155 Ala. 540; *Gamble v. Altman*, 125 Ala. 372. The answers do not even call for proof on the subject.— *Calvert v. Calvert*, 60 South. 261. The bill charges the grossest kind of fraud, and must be answered with particularity.—*Bromberg v. Hieronymous Bros.*, 69 Ala. 22. The pleas tender no issue and are insufficient. —*Francis v. White*, 49 South. 334. Pleas of purchaser for value without notice must allege facts showing good faith, and the actual payment of an adequate consideration.—*Gamble v. Altman, supra; Calvert v. Calvert, supra; Webb v. Elyton L. Co.* One plea admits knowledge of the fraud while the other sets up ignorance of the same.—Authorities supra; *Town of N. Decatur v. Scharfenburg*, 41 South. 1045. The burden of showing that the transaction was fair was upon Knight and Jones, and those claiming under them, as Knight was Sellers' attorney.—8 A. & E. Enc. of Law, 647. The contract was champertous.—*Poe v. Davis*, 29 Ala. 676. The price was grossly inadequate, sufficient to avoid the sale.—*Wood v. Croft*, 85 Ala. 260; *Gordon v. Tweedy*, 71 Ala. 202; 122 Fed. 240. The proof showed the complainant to be non compos and irresponsible, and such condition is presumed to have continued.—*Ray v. Ray*, 33 Ala. 187. Everything that happened at the fore-

closure put purchasers on notice of everything they could have ascertained by inquiry.—*Webb v. Elyton L. Co., supra; Tutwiler v. Montgomery,* 116 Ala. 493; *Ivey v. Stringfellow,* 82 Ala. 45; *Edwards v. Bender,* 121 Ala. 77. It therefore appears that none of them were purchasers for value without notice.—*Shook v. B. & L. Assn.,* 140 Ala. 575; *Gulf C. & C. Co. v. Ala. C. & C. Co.,* 145 Ala. 228.

M. G. GREGG, and W. S. BURROW, for appellee. A grantor cannot take advantage of his own fraud and defeat such a conveyance as a creditor might.—*Hubbard v. Allen,* 59 Ala. 296; *Patton v. Beecher,* 62 Ala. 589; *Jackson v. Rowell,* 87 Ala. 690; *Campbell v. Noble,* 145 Ala. 237. The pleas set up a complete defense and were fully proven.—*Webb v. Elyton L. Co.,* 105 Ala. 481; *Thomas v. Rembert,* 63 Ala. 571; *Hooper v. Strahan,* 71 Ala. 79; *Wood v. Holly M. Co.,* 100 Ala. 350. As to champerty, see *McCall v. Capehart,* 20 Ala. 526; *Tredwell v. Torbert,* 119 Ala. 281. As between the grantor and grantee the executed contract must stand. —*Williams v. Higgins,* 60 Ala. 518; *Watts v. Burgess,* 126 Ala. 171. The appellees must be placed in statu quo before they can be called on to rescind.—*Martin v. Martin,* 35 Ala. 560; *Young v. Arntz,* 86 Ala. 122; *Allgood's Case,* 115 Ala. 426; *Bullock v. Tuttle,* 90 Ala. 438. Complainant waited too long to rescind after discovery of the fraud.—*McLeod v. McLeod,* 137 Ala. 270. Laches began to run as to part of the land in 1903 and the other part in 1904.—*Haney v. Legg,* 129 Ala. 619; *Tredwell v. Torbert, supra.* The appellant cannot set up champerty even if it existed.—*Sibley v. Alba,* 95 Ala. 196. Appellant has no claim for relief against Patrick and Webber.—*Moog v. Strong,* 69 Ala. 102; *Rogers v. Adams,* 66 Ala. 602; *Van Cleve v. Wilson,* 73 Ala. 388.

[Sellers v. Knight, et al.]

McCLELLAN, J.—In the year 1889 J. T. Sellers was the owner of the surface of the S. W. ¼ of the S. E. ¼ of section 13, township 18, range 3 west, in Jefferson county. During that year he executed a quitclaim to S. L. Weaver, for, it is averred, the purpose of securing said Weaver and Charles P. Jones their compensation for legal services to him. By the payment of $75 to Weaver he quitclaimed back to Sellers. But, in response to the claim of Jones, Sellers, in July, 1903, made to said Jones and his partner, Hume F. Jones, a quitclaim to an undivided half interest in said land, upon the recited consideration of $75. This conveyance we letter, for convenience, "a." Subsequently, and at the dates indicated, the following conveyances, touching this land, purport to have been executed by and to the parties named:

(b) J. T. and P. C. Sellers (his wife) to John F. Knight, May 9, 1904, quitclaim.

(c) John F. Knight and wife, mortgage to J. T. Sellers, May 9, 1904, to secure unpaid purchase money.

(d) H. F. Jones and C. P. Jones and wife to C. A. Knight, August 12, 1904, quitclaim.

(e) J. T. Sellers to P. C. Sellers and Mary Copeland, "foreclosure deed" under the Knight mortgage ante, August 12, 1905.

(f) P. C. Sellers and husband, J. T. and Mary Copeland and husband, W. B., to C. A. Knight, February 19, 1906, quitclaim.

(g) C. A. and J. F. Knight to J. H. Davis and B. C. Burkhart, by warranty deed, three-fourths undivided interest and one-fourth undivided interest, respectively, March 10, 1906.

(h) J. H. Davis to C. B. Patrick, July 2, 1906, warranty deed, three-fourths undivided interest.

(i) Burkhart and wife to C. B. Patrick, warranty deed, July 11, 1906, one-fourth undivided interest.

(j) Patrick and wife to P. S. Webber, warranty deed, August 9, 1906, 10 acres on east side.

The bill, several times amended, is filed by Sellers against the Knights, Webber, Patrick, Burkhart, and Davis. Its object is to avoid and have canceled these conveyances that stand as a barrier between his right and title to the land, to the end that the title be restored to him, J. T. Sellers.

To state them generally, and as we understand them, there are set forth in the amended bill three theories, much commingled in statement, upon which the stated cancellations are sought, viz: (a) That Sellers' conveyances and those resulting in and from the mortgage foresclosure were induced by fraud on the part of John F. Knight, who was his attorney and his advisor in that relation, wherefrom John F. Knight secured the transmission of title to his brother, C. A. Knight, in every instance at a grossly inadequate value for the subject of each conveyance; (b) that Sellers was, when he conveyed, incapable of contracting, because of a mind impaired by the excessive use of intoxicants, or was, at the time, so completely intoxicated as that he could not afford legal assent to a contract, in consequence of which his interest in the land was sought to be secured at a grossly inadequate value, or that because of this state of his mind he became or was a favorable subject for the imposition of such fraud; (c) that the conveyances, lettered "a," "b," "f," token one transaction, and that the original agreement between complainant and John F. Knight was illegal, for that the engagement of Knight was to represent complainant in a then pending cause against Dallas et al. and pay the cost that might accrue, and to pay a definite

[Sellers v. Knight, et al.]

sum for the subject of the litigation if Sellers' contention prevailed.

Webber and Patrick constituted their answer and pleas a cross-bill, and thereby sought the quieting of their respective titles in the premises. The chancellor denied relief sought by both the original and the cross complainants.

The view of the cause which prevails here renders it unnecessary to note or to discuss a number of questions elaborately argued in the briefs. The record is very voluminous. We confine the opinion to the decisive matters to be mentioned.

It is manifest that if the complainant has not shown himself to be entitled to have his first deed to Knight or the mortgage from Knight to him (lettered paragraph "c") canceled or the quitclaim from P. C. Sellers and others to C. A. Knight (lettered paragraph "f") canceled, he could not prevail in this cause, whatever was ruled with respect to other antecedent instruments purporting to affect the title to the land in question. The burden of proof was upon the complainant to sustain the impeachments of the conveyances he assailed; and this rule is not at all qualified in this cause by the mere disclaimer of John F. and C. A. Knight, without other answer, of any interest in the subject of the litigation, for that *other* respondents did interpose sufficient answers to put the complainant to proof of the affirmative allegations of the original and amended bills. Of course John F. Knight's competency as a witness to testify in refutation of the charges against the validity of the conveyances assailed was not reflected upon, or the credibility of his testimony impaired, by the fact that his response to the bill only disclaimed interest in the lands involved in the contest.

The amended bill does not aver that Sellers was non compos mentis or was permanently insane, at the time any of his acts about this property took place. The most that can be drawn from any of its unstable averments in this regard is that his mind had become or was impaired by the excessive use of intoxicants, and that he had suffered *partial* paralysis in consequence. This state of allegation did not make a case within the doctrine of *Dougherty v. Powe,* 127 Ala. 577, 30 South. 524; *Galloway v. Hendon,* 131 Ala. 280, 31 South. 603, and *Wilkinson v. Wilkinson,* 129 Ala. 279, 30 South. 578, wherein it was ruled that a contract by one non compos or insane was absolutely void. The allegation stated conforms more nearly to the class described in *B. R. L. & P. Co. v. Hinton,* 158 Ala. 470, 48 South. 546, where it was ruled that contracts made by those otherwise than permanently mentally incapacitated were voidable, not void; and hence such contracts were subject to the rules of law pertaining to the seasonable disaffirmance, or to the affirmance of merely voidable contracts. The evidence, taken in its entirety, does not convince this court, as it did not the chancellor, that complainant was non compos or insane on or about any of the occasions involved in this contest. The distinct weight of the evidence, in connection with his pursuit of his vocation, and the impression a consideration of his testimony affords, leads to this conclusion: That when *drunk he* was incapable of judgment or legal assent to contracts, and when sober, which was by no means a rarity, he was as mentally capable as any entirely unlettered man, whose duties did not impose a practice of contractual dealings. He appears to have held, throughout many years, positions of responsibility and power, and to have received for his service a good wage. It is not conceivable that complainant could have had such

authority committed to him, or the discharge of such duties expected of him, as the evidence shows, and yet have been of the imbecile type some of his witnesses assert he was.

In *Oakley v. Shelley,* 129 Ala. 467, 29 South. 385, it was said, Justice Sharpe writing: "Unlike general and permanent insanity and idiocy, drunkenness does not create such legal incapacity as will alone render a contract wholly void. Though it may furnish the party suffering from it ground for rescission, yet, being voidable only, the contract may be affirmed and made binding by him after he becomes sober."

In substance, phases of the allegations before summarily stated would invoke this doctrine, which we appropriate in effect from that set down in the concrete in *Holland v. Barnes,* 53 Ala. page 88, 25 Am. Rep. 595, where a contract is executed on an insufficient consideration by one enfeebled in body and mind by disease and long-continued drunkenness, and who at the time of the execution of the contract is under the influence of intoxicants, a presumption of fraud arises which must be overcome by evidence of a fair consideration and fair and honest dealing on the party who claims the validity of the contract. The burden to establish the predicatory conditions to the presumption the law thus raises is on him who would avoid the contract.

When the whole evidence is considered, these conclusions of fact from the conflicting testimony seem to us to be clearly established: That J. T. Sellers was not intoxicated when the conveyance of May 9, 1904, to John F. Knight was executed; or when the mortgage of that date, from Knight to him, was executed; or when Sellers demanded of Knight payment of the mortgage debt; or when he engaged Messrs. A. C. and H. R. Howze to foreclose the Knight mortgage; or when he

secured W. B. Copeland's consent to bid at the foreclosure sale and buy in the property in the name of and for Mrs. Copeland and Mrs. P. C. Sellers; or when he executed the "foreclosure deed"; or when he executed, with his wife, P. C. Sellers, and the Copelands, the quitclaim to C. A. Knight, by agreement with John F. Knight. Whatever may have been his condition as to sobriety on other occasions than these, it cannot be affirmed, as complainant contends, that he was intoxicated on the stated occasions. The mental incapacity that attends sufficient intoxication—an incapacity that has not accomplished "general and permanent insanity or idiocy" (129 Ala. page 470, 29 South. page 386)—is temporary.—*Hinton's Case, supra.* That character of insanity or idiocy not having been shown, the burden was, as stated, upon complainant to establish incapacitating intoxication upon the occasions last mentioned. This he has not done.

The charges of fraud made in the bill are not sustained by a review of the entire evidence touching that subject. There is evidence susceptible of an interpretation that would support the charges so made; but the numerous circumstances disclosed in the evidence, as a whole, together with the acts of the parties and the positive testimony to the contrary, at least neutralize the effect of that phase of the evidence going to support the charges. Much of the evidence and argument for a finding favorable to the charges of fraud rest upon a contrast of what Knight paid or was to pay J. T. Sellers, and what complainant's evidence shows was a fair value for the land. This evidence and argument does not take due account of several conditions that naturally might have affected the value of this 40 in 1903, 1904, and 1906. The market value or salable value of land is necessarily materially affected by the perfection of the

title of the alleged owner or the freedom of that title
from adverse or incumbering claim.  Reputable attor-
neys, so far as this record shows, otherwise than as the
charges of fraud in the bill imply to the contrary, en-
tertained opinions that doubt, or value-impairing condi-
tions, attended complainant's title or right to the land.
Good faith and honest intention—complete exemption
from selfish, fraudulent purpose—of attorneys in the
attainment of opinions touching matters inviting their
professional consideration are not impeached by mis-
takes or errors of judgment in premises. The ascertain-
ment of the law or its application to concrete circum-
stances is not an exact science.  To so impeach, some-
thing more must attend than an erroneous conclusion
of law or of its application to the concrete matter under
consideration.  Even what would appear to some the
plainest of cases may, without wrongful purpose so in-
spiring, appear to another to be the subject of serious
doubt.  So, we think it should not be concluded that
the Messrs. Jones or John F. Knight were evilly mo-
tived even if it were affirmed that they were entirely
mistaken in their legal opinions  in  respect  of  the
dubiousness of Seller's title or rights in 1903 or 1904, or
of the necessity or desirability that a bill should be filed
to quiet his title or vindicate and establish his rights
in the premises.  The evidence discloses at least bases
for their opinions, regardless of whether such opinions
were *legally* justified or sustainable.  Another factor
affecting, as the evidence shows, the value of this 40
was the opening, or prospective opening, of a conven-
ient way, toward the city of Birmingham, through the
mountain, beyond which from the city of Birmingham
the land lies.  It appears that the land was of practi-
cally little, if of any, material value for farming pur-
poses; that its timber value was small at that time

(1903-1904). It is hence evident that estimates of its value as of that time were necessarily affected with the element that extraneous conditions or circumstances, largely prospective in nature, introduce into such matters. In such circumstances one may, with entire good faith, be unable to translate into as great a value as another the largely prospective increase of utility or availability or demand for a property. Optimism, naturally dominant, but not present in all, will more often account for an appreciation of the prophetic value of property.

Another factor of probable consideration when the evidence of this 40's value is to be weighed is the fact that there has been a severance, in title, of the mineral from the surface, though it may be assumed, for the occasion only, that the Joneses and Knight viewed the land in 1903 and 1904 as being unsevered, in title in this respect. Whether with that area (40 acres) the possibility that the owner of the mineral "close" would find thereunder the subject of his title, and by usual processes entered upon its extraction, would affect the value of the surface is not a matter with particular reference to which the evidence on value was taken.

Again, at the time of the conveyance to Knight, May 9, 1904, a bill was pending, filed by Sellers and Jones, to quiet the title, and there was extant a deed from the auditor, based upon what purported to be a tax sale.

On the whole evidence, we cannot affirm that the values appearing in the instruments last mentioned, and sought to be annulled, were *then* so grossly inadequate as to, from that source, impute fraud to the Joneses, to the Knights, or to any others. Evidence of value is necessarily opinion evidence. It is not conclusive on courts or juries, even when without conflict.—*Andrews v. Frierson*, 144 Ala. 470, 39 South. 512. The complain-

ant's failure to express, within a reasonable time, dissatisfaction with the value set forth in the deed of May 9, 1904, to Knight and the same as affording the mortgage debt, which instrument he caused to be foreclosed by the Messrs. Howze, and in the opinion induced W. B. Copeland to purchase at the sale for his wife and Mrs. Copeland, and with the value expressed in the quit-claim from his wife and himself and the Copelands to C. A. Knight in 1906, is, as a matter of evidence, of weight as evincing an estimate, of his own, of the value of the land at those times, and as indicative of an opinion that does not support the notion of such gross inadequacy as shocks the conscience.

Where a contracting party has fair understanding—mental capacity to contract— and his act is not the result of duress or fraud, in any of its varied forms, the fact that his bargain is rash, improvident, or hard will not justify the courts in setting it aside.—*Juzan v. Toulmin*, 9 Ala. 662, 685, 44 Am. Dec. 448.

There is another view of the case that leads to the same result, namely, that J. T. Sellers, by his conduct, affirmed—ratified—the deed of May 9, 1904, to John F. Knight. If it is assumed, as we do for the occasion only, that it was voidable merely, Sellers not being shown by the weight of the evidence to have been so generally incapacitated as to render his act wholly void, his conduct, some of which we describe, in respect of: demand upon Knight for the payment of the mortgage debt, a fact testified to by Sellers; his voluntary delivery of the mortgage to the Messrs. Howze, with the direction to foreclose it under the power; his voluntary execution of the "foreclosure deed," after full information of its purport, as testified to by Henry R. Howze; his voluntary inducement of, and arrangement with, W. B. Copeland to buy at the foreclosure sale; and his

voluntary execution, with his wife and the Copelands, of the deed to C. A. Knight. The evidence leaves no doubt that he was sufficiently fully informed of all the pertinent facts and circumstances as to admit of the law's conclusion that he intended to affirm that which he might (on the assumption stated) have seasonably disaffirmed. Sellers, himself, testified that he knew the title "was not in him" after the foreclosure sale. He testified that he told Knight "the title was in my wife and Copeland's wife." It is not conceivable, under the evidence, that Sellers did not know the consideration for the conveyance of May 9, 1904, and of the mortgage, to him, of that date. His testimony in the record evinces an unusual faculty of memory, an ability to understand and answer rather long, complicated questions, and a power of expression, aside from the positive evidence of his mental capacity, that would refute any notion that he could have acted in utter ignorance of the matters and their immediate incidents, with which his acts were concerned. We think, appropriating the court's words in *Oakley v. Shelley,* 129 Ala. page 470, 29 South. page 386, "by such action the complainant ought to be held to have affirmed his execution of the deed, even if it had been previously subject to the alleged infirmity."

If, as complainant testified, John F. Knight promised Sellers to convey to Mrs. Sellers 10 acres of the land as an inducement for the execution of the Copeland-Sellers deed to C. A. Knight, and this promise has been breached or left unperformed, that cannot, of course, warrant the cancellation of that conveyance. The remedy, if any, would be for the breach of the engagement, if made.

The charge that the conveyance of May 9, 1904, to Knight was affected with the champerty or mainte-

[Canty v. Bixler, et al.]

nance inhering in features of the agreement of which the conveyance was a part cannot be sustained for this reason, if not for others : That the agreement involved was long since fully *executed*. Parties to unlawful agreements which have become executed are left by the law in the situation they have made. Being in pari delicto, the courts will not relieve against their executed contracts.

Our conclusion accords with that of the chancellor, that original complainant has not shown his right to relief. In that particular the decree is affirmed.

On the cross-appeal nothing can be taken by cross-appellants for that the cross-bill was predicated of defensive matter only; no independent equity being shown. The decree, in the particular that the cross-bill was dismissed and the costs apportioned is therefore dismissed.

The costs accruing on the appeal will be taxed against the appellant, Sellers.

Affirmed.

DOWDELL, C. J., and SAYRE and SOMERVILLE, JJ., concur.

