# Greil Bros. Co., *et al. v.* McLain.

### Bill to Cancel Note and Mortgage.

(Decided February 10, 1916. Rehearing denied June 1, 1916.
72 South. 410.)

1. **Intoxicating Liquors; Licenses; Transfer.**—The transfer of a license for the sale of intoxicating liquors under Acts 1911, p. 260, could be made only with the approval of the Excise Commission, and by a compliance with all the provisions of §§ 14, 17 and 18 of said act.

2. **Same.**—The purchase of a license for the sale of intoxicating liquors is valid and binding where authorized by the Excise Commission if the transferee possesses the qualifications prescribed by law for carrying on that business.

3. **Same.**—A contract for the purchase of a license for the sale of intoxicating liquors, and the transfer of the license to the buyer is invalid and of no binding effect, without the permission of the Excise Commission under Acts 1911, p. 260.

4. **Sales; Misrepresentations; Executory Contract.**—Misrepresentation by the seller that the Excise Commission had transferred, or had authorized the transfer of, a license to the buyer for the sale of intoxicating liquors, and that this was in fact, lawful authority to the buyer to engage in the sale of intoxicating liquors, when in fact, such authorized transfer had not been made as required by Acts 1911, p. 260, constitutes such a misrepresentation of material fact as may void an executory contract of purchase upon discovery of the misrepresentation.

5. **Same; Fraud.**—The statements by a person negotiating a sale affirming as true that which is untrue, though not known by him to be so, is a fraud, if such assertion be to any extent an inducement to the other party to enter into the contract.

6. **Fraud; Untrue Statement; Honest Belief.**—Honest belief in the truth of a statment of fact, made as an inducement to the execution of the contract, does not relieve the person making such statement of his legal liability therefor.

7. **Sales; Illegality; Transfer of Liquor License.**—The sale and transfer of a retail liquor license by the licensee otherwise than as specifically directed by statute, is contrary to public policy, and executory contracts for such sale and transfer are founded on illegal consideration, and are void and unenforceable.

8. **Contracts; Public Policy; Validity.**—Contracts specifically prohibited by law, or the enforcement of which violates the law, or the making of which violates laws which were enacted for regulation and protection, as distinguished from laws enacted solely for revenue purposes, are void and unenforceable.

9. **Mortgages; Consideration; Injunction.**—Injunction is the proper remedy to restrain the mortgagee from exercising power of sale under the mort-

gage, if the mortgage be without consideration, or if to enforce the contract would be against public policy.

**10. Cancellation of Instrument; Misrepresenting Material Facts; Pleading.** —A bill for cancellation of a note and mortgage on the ground that their execution and delivery was induced by material representation that the Excise Commission had consented to a transfer of a retail liquor license, when in fact, no such consent had been given, was demurrable, if it did not allege that the license was not in fact properly and legally transferred to complainant by such Excise Commission.

APPEAL from Montgomery Chancery Court.

Heard before Hon. O. S. LEWIS.

Bill by M. T. McLain against the Greil Bros. Company and others, to cancel certain notes and mortgages. From an order overruling demurrer respondents appeal. Reversed and remanded.

STEINER, CRUM & WEIL, for appellant. HILL, HILL, WHITING & STERN, for appellee.

THOMAS, J.—This bill was filed by appellee, to cancel certain notes and a mortgage, and preliminary injunction issued to prevent foreclosure before a final determination. Appellants filed a motion to dissolve the injunction, and a demurrer challenging the sufficiency of the bill for want of equity and on other grounds. The cause being submitted on the motion and on the demurrer, the chancellor overruled the motion to dissolve and sustained certain of the grounds of demurrer. After amendment and refiling of demurrer to the bill as amended, by agreement, the cause was submitted in vacation on the demurrer, and the appeal is taken by appellant, Greil Bros. Company, a corporation, from the decree overruling its demurrer. The question presented is whether the amended bill is sufficient for cancellation of the notes and mortgage, for want of consideration, or as being illegal and void.

It is averred, among other things, that appellee had applied to the excise commission of Montgomery, Ala., for a license to engage in the business of a retail liquor dealer at No. 944 Bell street, in the city of Montgomery, and that his application had not been granted; that a license has been granted and issued to Carew Powell, authorizing him to conduct the business of a retail liquor dealer at Nos. 118 and 120, south side, Highland avenue, which license bore on its face the words, "This license is

nontransferable;" that Powell's place of business was consumed by fire, and that he did not rebuild nor resume business under this license; that complainant applied to appellant corporation, or its agents, to purchase and to secure the legal transfer of Powell's license, with permission to transfer the locus of that business from Nos. 118 and 120, south side, Highland avenue, to No. 944 Bell street, in said city; that this transaction was negotiated and consummated through appellant's agents and Powell, and resulted in appellee's paying the sum of $1,500 in cash, as the amount of the state's license for engaging in the said business, as provided by law, together with the additional sum of $1,000, evidenced by his promissory notes secured by a mortgage on the real properties described in the bill, and that this $1,000 was to be applied by Greil Bros. Company on Powell's indebtedness to that corporation.

The exhibits to the bill—the license attempted to be transferred and the agreement of purchase reciting the real consideration for the notes and mortgage—and the averments of the bill show want of consideration, and the misrepresentation of a material fact that induced complainant, to his injury, to give the questioned notes and mortgage. It is plain from this record that Powell's attempted transfer of his license to McLain was insufficient as lawful authority to the latter to conduct the business of a retail liquor dealer at No. 944 Bell street, in said city. Section 14, Acts 1911, p. 259, required that before the excise commission could issue a license, the applicant should deposit the fee required, and give notice of such application in a newspaper of general publication in the city within which the licensee expected to do business, for two successive weeks, before the hearing of the application, such notice to contain the full name of the applicant, the exact street and number where the business was to be conducted, etc. Provision was made that opportunity should be given any qualified elector to file written objection to the granting of the license, "against the applicant, or the place of business," and that thereon a hearing should be had. It was further provided (section 15, said act) that the excise commission, by indorsement, might permit the licensee to transfer his business to some new or other location, after 20 days' publication of such intention, or to transfer any licensee's license, on the latter's request, to some other person, firm, or corporation, on the condition that such proposed transferee should be found to have all the qualifications

required of applicants for license; and that the commission should hear any objections which might be made by any qualified elector of the city to the transfer of any license to another party, or to the removal of a licensee's business to some other location, and should refuse to permit such transfer or such removal if, in their judgment, the same should be refused. Section 17 of the act required an affidavit of good conduct, while section 18 exacted a bond conditioned that the licensee would observe all the rules and regulations imposed upon him by the act.

(1) While the act did not prescribe the exact form of the transfer, it is clear that the transfer was designed to be made only to one ascertained (after notice by the commission) to be qualified to conduct the business, in like manner and under like conditions laid down for original applicants for license, and that the transferred business was to be conducted at an approved location, after notice, and under bond given by the substituted licensee as in the case of an original licensee. No reasonable construction of the act would warrant the transfer of a license to parties to whom a license would not be issued originally, nor authorize the transferee to engage in the liquor business at a place where an original licensee would not be permitted to engage therein. All the requirments and safeguards provided by the staute, as to a licensee, must be held to apply as well to a transferee of the license. Any other construction would render the act ineffectual, opening the door for evasion of the law, both in the way of the securing of license by persons not qualified and in the way of carrying on the business at improper or prohibited places.

(2, 3) The purchase of a license duly issued to another by warrant of the excise commission, where authorized by the commission, the transferee having all the qualifications prescribed by law for carrying on the business and the engaging in the sale of liquors thereunder at a designated place being permitted by the commission under the act, would not be the doing of an unlawful act, or the engaging in an illegal business. If, however, the permission was not obtained, and the transfer was not made as required by the statutes, the transaction of purchase and transfer would have no binding effect.

Complainant avers that the representations of respondent, or of one acting for it, which are specifically set out in the bill, were misrepresentations of a material fact, and were made to

induce him to purchase said license, and that, relying upon said representations, he was induced to his injury to make the purchase, paying for the license the cash sum of $1,500, and giving, in addition, the notes and mortgage, cancellation of which is prayed.—Code of 1907, §§ 2469, 4298, 4299; *So. L. & Y. Co. v. Gissendaner,* 4 Ala. App. 523, 58 South. 737; *Corry v. Sylvia Y Cia,* 192 Ala. 550, 68 South. 891; *Prestwood v. Carlton,* 162 Ala. 332, 50 South. 254; *Ball v. Farley,* 81 Ala. 292, 1 South. 253.

(4) If the statement was made to appellee by or for appellant that the exercise commission had transferred, or authorized the transfer by Powell to appellant of, the license, and that this was lawful authority for complainant to transact the desired business at No. 944 Bell street, when in fact such authorized transfer had not been made as required by the statute, and Mc-Lain acted on such statement as the inductment to the purchase, it was such a misrepresentation as may avoid the executory part of the contract of purchase. It was the duty of the party making the inducing representations to have obtained accurate information as to the compliance with the legal requirements for the transfer of the license, before its sale and attempted transfer, and receiving the consideration therefor.

(5, 6) One who is negotiating a sale must not recklessly or even innocently assert that as a fact which is untrue, if such asserted fact be to any extent an inductment to the other party to enter into the contract. It is as much a fraud to affirm as true that which is untrue, though not known to be so, as it is to assert as true that which is untrue and known to be so.—Code 1907, §§ 4298, 4299; *Prestwood v. Carlton, supra; Jordan v. Pickett, supra; Ball v. Farley, supra; Henry v. Allen,* 93 Ala. 197, 9 South. 579. "Honest belief in the truth of an inducing statement of fact will exculpate from moral fault, but does not relieve from legal liability to make good."—*Prestwood v. Carlton, supra.*

(7) It is apparent that a sale and transfer of a retail liquor license by a person to whom such license had been issued by the excise commission, otherwise than as specifically permitted by the statute, is contrary to public policy.—*Robertson v. Robinson,* 65 Ala. 610, 39 Am. Rep. 17; *Sunflower Lumber Co. v. Turner Supply Co.,* 158 Ala. 191, 48 South. 510, 132 Am. St. Rep. 20. Executory contracts as to such unauthorized sales and transfers, founded on an illegal consideration, are void and unenforceable.

[Greil Bros. Co., et al. v. McLain.]

(8, 9) Chief Justice ANDERSON collects the authorities in *Ellis v. Batson*, 177 Ala. 317, 58 South. 193, for his statement of the general rule that contracts specifically prohibited by law, or the enforcement of which violates the law, or the making of which violates the laws which were enacted for regulation and protection, as distinguished from a law created solely for revenue purposes, are void and nonenforceable. Under the averments of the bill, the contract in question comes within the rule of the *Ellis Case*. The mortgage and the notes evidencing the transaction were executory when the bill was filed. A court of equity may restrain the mortgagee from the exercise of the power of sale given in the instrument, if the mortgage be without consideration, or if to enforce the contract would be against public policy.—*Vaughan v. Marable*, 64 Ala. 66; *Caldwell v. Caldwell*, 166 Ala. 406, 52 South. 323, 139 Am. St. Rep. 48; *Gilbert, et al. v. Holmes*, 64 Ill. 548.

In *Sellers v. Knight, et al.*, 185 Ala. 96, 64 South. 329, this court held that a deed, affected with the champerty inhering in the agreement of which the conveyance was a part, cannot be sustained where the agreement involved "was long since fully executed;" that parties to unlawful agreements which have been executed are left by the law in the situation they made. Being in pari delicto the courts will not relieve against their executed contracts. This is authority for the cognate rule that such executory agreements may not be enforced by the courts.

The case made by the bill was a transaction not permitted by the statute and, indeed, in violation thereof; and on that account the transaction was illegal and void, and opposed to public policy.—*Bluthenthal & Bickert v. Town of Headland*, 132 Ala. 249, 31 South. 87, 90 Am. St. Rep. 904; *Ellis v. Batson, supra; Mayor and Aldermen of Ensley v. Hollingsworth & Co.*, 170 Ala. 410, 54 South. 95, Ann. Cas. 1912D, 652; *General Electric Co. v. Town of Ft. Deposit*, 174 Ala. 179, 56 South. 802. We have shown that the proposed transfer by Powell, to the mortgagor, of the license issued to him by authority of law, to conduct the business in question at Nos. 118-120, south side, Highland avenue, was no authority to McLain to conduct the like business at No. 944 Bell street. It cannot be successfully maintained, under the averments of the bill, that McLain was equally guilty with respondents in the transaction. He was trying to secure the right to prosecute a lawful business, under license, at his place on Bell

[Barnett v. Freeman.]

street, and on the alleged representations paid the cash consideration and gave his notes and mortgage for the license in question.

No error was committed by the trial court in its rulings on demurrer, and the decree is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.

## ON REHEARING.

THOMAS, J.— (10) On consideration of the application for a rehearing, we are of the opinion that the bill as amended failed to aver that the license referred to as having been issued originally to Carew Powell was not properly and legally transferred to complainant by the excise commission of Montgomery county, Ala.; and for this failure, pointed out and challenged by the fifth ground of the defendants' demurrer, the bill did not aver the misrepresentation of that material fact. It results that the decree of the chancellor must be reversed and the cause remanded.

Complainant has 30 days in which to amend his bill if so advised.