## ROLLER *v.* MURRAY.

CONTRACTS; CHAMPERTY; ELECTION OF REMEDIES; FORMER ADJUDICATION; ATTORNEY AND CLIENT.

1. Though a contract be champertous, if money be paid or property conveyed in its discharge, the contract becomes executed, and the court will treat the joint beneficiaries of the champertous contract as standing *in pari delicto,* refusing aid either by compelling a repayment or by cancelation of the contract.

Note.—On right of attorney to recover on *quantum meruit* for services rendered under illegal or champertous contract, see notes in 2 L.R.A. (N.S.) 261, and 38 L.R.A. (N.S.) 1202.

2. The doctrine of the election of remedies applies not only where the remedies open to the party seeking redress are inconsistent, but where the adoption of one will amount to a complete denial or negation of the other. It has no application, however, where the remedies are concurrent and involve distinct matters, either of which may call for independent relief.

3. A point not in litigation in one action cannot be received as conclusively settled in any subsequent action upon a different cause, because it might have been determined in the first action.

4. In a suit to establish the right of the plaintiff to a one-fifth interest in the purchase price of a large tract of land sold in 1916 to the Federal government, under a contract made in 1873 with the plaintiff, for professional services in recovering the land for the grantor of the vendor, it appeared that shortly after the rendition of the services the grantor had conveyed a one-fifth interest in 10,075 acres of the tract to the plaintiff, who subsequently reconveyed such one-fifth interest to the grantor to enable her to sell the entire tract, including the interest of the plaintiff, to a third party, who bought, but defaulted in his contract of purchase; that before such default, in suits brought by the plaintiff in other jurisdictions to establish his equitable right to one fifth of such purchase price, it was determined that the plaintiff's contract for professional services was champertous and void, but his rights to a one-fifth interest in the 10,075 acres under the deed to him were not determined; and that the vendor to the government took title with notice of plaintiff's rights in the premises. It was *held* that plaintiff was entitled out of the purchase price paid by the government for the entire tract to one fifth of the value of 10,075 acres of the land, on the basis of the sale, the plaintiff having become vested by the deed to him by the original owner with a one-fifth interest in the 10,075 acres, which interest could not be devested by the original owner or her grantee invoking the illegality of the contract for services.

No. 2993. Submitted February 7, 1917. Decided April 2, 1917.

HEARING on an appeal by the plaintiff from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity to enjoin payment by the Secretary of the Treasury and the Secretary of Agriculture of the purchase price of a tract of land purchased by the Federal government, and to establish the right of the plaintiff to one fifth of such purchase price. *Reversed.*

The COURT in the opinion stated the facts as follows:

This appeal is from a decree of the supreme court of the District of Columbia dismissing a bill in equity filed by appellant, John E. Roller, to restrain payment by defendants William G. McAdoo, Secretary of the Treasury, and David F. Houston, Secretary of Agriculture, of the purchase price of certain lands in Virginia and West Virginia conveyed by defendant Murray to the United States, and to be decreed a one-fifth interest in said fund.

It appears as part of the history of this case that appellant, Roller, hereafter referred to as plaintiff, contracted in 1873 with one Emily Hollingsworth to recover for her the title to 52,757 acres of mountain land lying in the counties of Augusta and Rockingham, Virginia, and the county of Pendleton, West Virginia, known as the "Hollingsworth survey," which land had been sold for taxes during the Civil War. Plaintiff was to receive as compensation for his services one fifth of the proceeds of all lands recovered, he to pay all expenses of litigation incurred in Virginia. In pursuance of this agreement, plaintiff proceeded with the work, and succeeded in recovering the lands.

It is averred in the bill "that by deed dated the 31st day of May, 1875, Emily Hollingsworth of the city of Philadelphia sold to plaintiff and signed, acknowledged, and delivered to plaintiff a deed conveying to him a one-fifth interest in a tract of 10,075 acres lying in the county of Pendleton in the state of West Virginia, being a part of that part of the grant to Levy Hollingsworth for 52,757 acres of land, known as the Hollingsworth survey, lying partly in the county of Augusta and partly in the county of Rockingham in the state of Virginia, and partly in the county of Pendleton in the state of West Virginia, which lies on the western side of the top of the Great Shenandoah Mountains in the said county of Pendleton, the exact boundaries of which your plaintiff is not able to give without an actual survey of the same, but said tract being well known and thoroughly marked and identified by well-established lines and corners. This deed remained in the possession of your plaintiff

until the 10th day of November, 1876, when he returned the same at the request of the said Emily Hollingsworth to R. C. McMurtrie, a lawyer of the city of Philadelphia, then representing her, for the purpose of allowing her to sell the entire property, including the interest of the plaintiff, to the Royal Land Company of Virginia, and that said deed was retained by the said Emily Hollingsworth and her attorney and by her delivered to the said Mary H. Murray as hereinafter shown, and was never afterwards returned to the plaintiff. The effect of which proceedings was to leave the plaintiff vested with an undivided one-fifth interest in the tract of 10,075 acres aforesaid." It also appears that shortly prior to the time this deed was returned to Hollingsworth, plaintiff executed a deed to her for the land in question for the express purpose of enabling her to enter into the contract of sale with the Royal Land Company.

It is also averred in the bill that, on November 10, 1876, Hollingsworth contracted to sell to the Royal Land Company of Virginia all of said tract of 52,757 acres, "excepting therefrom certain lands theretofore conveyed by her to Joseph B. Loose, J. A. Loewenbach, and John E. Roller, aggregating 9,388 acres," for the sum of $70,000, of which $52,000 was to be paid to Hollingsworth and $18,000 to plaintiff, $13,000 of which represented plaintiff's one-fifth interest and $5,000 additional payment for services rendered by plaintiff to the Royal Land Company. Hollingsworth executed a deed contemporaneously with the contract, which was left with McMurtrie, to be delivered to the company when it complied with its agreement. Various attempts were made to carry out the contract with the Royal Land Company, but without success; and on June 10, 1881, the Atlantic & Ohio Railroad Company entered into a contract to purchase the lands at the same price named in the contract with the Royal Land Company, the latter contract being rescinded and abandoned. The railroad company failed to carry out its contract, though attempts were made by parties undertaking to assume the obligations of the company, among which was a sale by defendant Murray to one George A. Wheelock, to which reference will hereafter be made.

It is further averred that, on April 1, 1889, Hollingsworth, in consideration of love and affection, conveyed the balance of said tract of land, amounting to 43,000 acres, more or less, to defendant Murray, who had full knowledge of plaintiff's interest therein, with an agreement on her part "to carry out the contracts between the said Emily Hollingsworth and the plaintiff, she having full notice and knowledge of the rights and interests of the plaintiff in the premises."

Plaintiff's bill is based upon the theory that, by reason of the contracts between Hollingsworth and the Royal Land Company and between her and the Atlantic & Ohio Railroad Company, defendant Murray became seized of the remaining 43,000 acres of said tract to the use of plaintiff as the beneficial owner of one-fifth thereof, asserting also his title to one-fifth interest in the 10,075-acre tract by virtue of his conveyance from Hollingsworth. The prayer, in brief, is that plaintiff be decreed to be entitled to receive such portion of the purchase price of said lands now in the possession of defendants McAdoo and Houston as will represent a fair value of his one-fifth interest therein.

Defendant McAdoo answered, disclaiming any interest in or control over said fund; and defendant Houston answered at some length, setting out defenses totally immaterial to the government or, its agents, but averring that he had in his possession the fund in question, which would be retained awaiting the final disposition of the cause. Defendant Murray moved to discharge the rule and dismiss the bill, on the grounds that the alleged cause of action grows out of champertous agreements; that the alleged claim of plaintiff is *res judicata;* that it is barred by the Statute of Limitations, and that the bill is without equity.

From the decree sustaining the motion to dismiss this appeal was taken.

It appears that the matters and things here advanced as basis for recovery, including the effect of the recitals in the contracts between Emily Hollingsworth and the Royal Land Company and the Atlantic & Ohio Railroad Company, were, with one exception, fully considered and finally adjudicated by the Vir-

ginia court of appeals on November 21, 1907, in the case of
*Roller v. Murray,* 107 Va. 527, 59 S. E. 421. That suit was
based upon the original contract with Hollingsworth, as con-
firmed by the recitals in the contracts between Hollingsworth
and the Royal Land Company and the Atlantic & Ohio Rail-
road Company. These agreements were set out in the bill and
relied upon as basis for relief as confirming the original con-
tract. The court stated plaintiff's cause of action as follows:
"The bills assert, as the gravamen of the plaintiff's case, an
equitable right to one fifth of the purchase price arising on the
sale of the Hollingsworth lands by Mrs. Murray to Geo. A.
Wheelock (apparently relying on an equitable assignment,
though without so naming the equity claimed), and to the bene-
fit of the security of the deed of trust given by Wheelock upon
the land to secure the purchase money; notice to Wheelock of
the plaintiff's rights being alleged, and the prayer of all the
bills being that these rights be established by the court, and
that the Wheelock deed of trust be enforced for plaintiff's bene-
fit, notwithstanding the subsequent release of that deed and
of Wheelock by the act of Mrs. Murray." The court in an
elaborate opinion held the contract for services between plain-
tiff and Hollingsworth champertous and illegal, and entered a
decree dismissing the bill without prejudice, however, to the
right of plaintiff to bring suit for compensation for his services
on a *quantum meruit.* Thereafter, such a suit was brought in
Virginia (*Roller v. Murray,* 112 Va. 780, 38 L.R.A.(N.S.)
1202, 72 S. E. 665, Ann. Cas. 1913B, 1088), wherein it was
held that, inasmuch as the original contract was not only void,
but illegal, for champerty, the action of *quantum meruit* could
not be maintained.

Thereafter, plaintiff brought a suit in the county of Pendle-
ton, West Virginia, which stated substantially the same cause
of action as was stated in the first suit in Virginia. The ac-
tion, as in Virginia, was to enforce an equitable right to one
fifth of the purchase price arising from the sale to Wheelock.
It may here be suggested that Wheelock defaulted, and the
land reverted to Murray. The supreme court of appeals of

West Virginia, on October 22, 1912, in the case of *Roller* v. *Murray,* 71 W. Va. 161, L.R.A.1915F, 984, 76 S. E. 172, Ann. Cas. 1914B, 1139, affirmed the decree of the lower court dismissing plaintiff's bill, upon the ground that it was required to accord full faith and credit to the judgment of the Virginia court. "Being *res judicata* in Virginia, it must be so in West Virginia, because the Virginia decision must have the same faith and credit in all other States that it is entitled to in that State."

*Mr. E. Hilton Jackson,* for the appellant, in his brief cited:

*Anderson* v. *Phlegar,* 93 Va. 145; *Blake* v. *Tucker,* 12 Vt. 39; *Brady* v. *Daly,* 175 U. S. 148; *Brewer* v. *Hill,* 205 U. S. 347; *Cecil* v. *Early,* 10 Gratt. 198; *Corbett* v. *Boston & M. R. Co.* 219 Mass. 357; *Cordle* v. *Burch,* 10 Gratt. 480; *Cox* v. *Thomas,* 9 Gratt. 312; *Gardner* v. *Griffith,* 93 Tex. 355; *Gibson* v. *Oppenheimer,* 154 S. W. 694; *Hartney* v. *Security L. Ins. Co.* 151 S. W. 477; *Haytian Republic,* 154 U. S. 124, 125; *Johns* v. *Larson,* 28 Wis. 604; *McNutt* v. *Hilkins,* 80 Hun. 235; *Morris* v. *Wheat,* 8 App. D. C. 387; *Northern Assur. Co.* v. *Building Asso.* 203 U. S. 106; *Reynolds* v. *Cook,* 83 Va. 817; *Robb* v. *Vos,* 155 U. S. 13, 43; *Roller* v. *Murray,* 107 Va. 527; *Roller* v. *Murray,* 112 Va. 780; *Roller* v. *Murray,* 71 W. Va. 161; *Roller* v. *Murray,* 234 U. S. 738; *Ross* v. *Railway Co.* 55 Iowa, 691; *Sellers* v. *Knight,* 185 Ala. 96; *Smith* v. *Gilmore,* 7 App. D. C. 192; *Stark* v. *Starr,* 94 U. S. 477, 485; *State ex rel. Buskirk* v. *Sims,* 76 Ind. 328; *Supervisors* v. *Dunn,* 27 Gratt. 608; *Union C. L. Ins. Co.* v. *Drake,* 214 Fed. 547; *Whitney* v. *Parish,* 154 S. W. 267; 15 Cyc. 262; Lomax Dig. p. 257 (see X. 2d) ; Minor, Inst. 4th ed. p. 827; 7 Pleading and Practice and cases, pp. 364, 366; Virginia Code (1904) chap. 127, secs. 2415, 2426.

*Mr. John E. Roller,* the appellant, also appeared *in propria persona,* and filed a brief.

*Mr. William A. Gordon* and *Mr. J. Holdsworth Gordon,* for the appellee Mary H. Murray, in their brief cited:

*Baker* v. *Moody,* 117 Ga. 207; *Christmas* v. *Russell,* 5 Wall. 290; *Re Garver, Receiver,* 176 N. Y. 386; *Insurance Co.* v. *Harris,* 97 U. S. 331; *Johnson* v. *Van Wyck,* 4 App. D. C. 294; *Klipstein* v. *Grant,* 141 Fed. 72; *McDonald* v. *Bank,* 111 Mich. 694; *McMullen* v. *Hoffman,* 174 U. S. 639; *Peck* v. *Heurich,* 6 App. D. C. 273; *Peck* v. *Heurich,* 167 U. S. 624; *Peters* v. *Bain,* 133 U. S. 670; *Robb* v. *Vos,* 155 U. S. 1; *Roller* v. *Murray,* 107 Va. 528; *Roller* v. *Murray,* 112 Va. 780; *Roller* v. *Murray,* 71 W. Va. 161; *Southern P. R. Co.* v. *United States,* 168 U. S. 1; *Stanton* v. *Haskins,* 1 McArth. 558; *Thompson* v. *Howard,* 31 Mich. 309.

*Mr. John E. Laskey,* United States District Attorney, and *Mr. Mabry C. Van Fleet,* Special Assistant, for the appellees William G. McAdoo and David F. Houston, in their brief cited:

*Baker* v. *Cummings,* 181 U. S. 117, 124; *Haytian Republic,* 154 U. S. 118, 125; *Johnson* v. *Van Wyck,* 4 App. D. C. 319; *Peck* v. *Heurich,* 6 App. D. C. 284; *Peck* v. *Heurich,* 167 U. S. 624; *Robb* v. *Vos,* 155 U. S. 13, 45; *Smith* v. *Gilmore,* 7 App. D. C. 192; *Southern P. R. Co.* v. *United States,* 168 U. S. 1, 48; *Warder* v. *Newburgh,* 40 App. D. C. 385.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It will be observed that the effect of the recitals in the contracts of the Royal Land Company and the Atlantic & Ohio Railroad Company was in issue in the Virginia suit. They form a partial basis for the present action; and, in so far as they do, they are *res judicata* in the light of the Virginia decree. "A right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the sec-

ond suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified." *Southern P. R. Co.* v. *United States,* 168 U. S. 1, 42 L. ed. 355, 18 Sup. Ct. Rep. 18. See also *New Orleans* v. *Citizens Bank,* 167 U. S. 371, 42 L. ed. 202, 17 Sup. Ct. Rep. 905; *Davis* v. *Brown,* 94 U. S. 423, 24 L. ed. 204.

That the effect of the recitals in the Royal Land Company and the Atlantic & Ohio Railroad Company contracts upon the original contract was considered by the Virginia court is strongly evidenced by the fact that, in the opinion, the effect of the deed from Hollingsworth to Roller conveying a one-fifth interest in the 10,075-acre tract was expressly excluded from its consideration. On this point the court in its opinion said: "It is incidentally mentioned as a matter of evidence in the amended and supplemental bill, and alluded to in the briefs for complainant, that General Roller obtained a deed of conveyance from Miss Hollingsworth for a one-fifth interest in a certain tract of 10,075 acres lying in West Virginia, part of the 52,000 acres; and that this deed was returned to Miss Hollingsworth for certain purposes and never returned to him. I do not understand that this circumstance is brought forward as an independent ground of relief as to the one-fifth interest in the particular land concerned. The pleadings are not framed with a view to relief on that account, and this court would be wanting in territorial jurisdiction." On reargument (107 Va. 546), the court emphasized its refusal to consider this feature of the case as follows: "The conveyance at one time by Miss Hollingsworth to General Roller of a one-fifth interest in a certain portion of the lands lying in West Virginia, the deed for which was afterwards returned to her, is urged as a reason why the court should retain jurisdiction and grant relief as to that portion of the land; but this is a suit to enforce the sale of the land under the Wheelock deed of trust, and this court cannot decree the sale of land lying in West Virginia, even if such relief would be proper under the other facts of the case."

This conveyance was not brought into the West Virginia

case. The pleadings were silent as to the whole transaction. Hence, it was not before the court. But it is urged that plaintiff is, nevertheless, estopped to set it up in this action, since the suit in West Virginia was instituted in the county where the land involved in this conveyance is situated, and plaintiff could have asserted his rights in that action; hence, it is now *res judicata.* The doctrine of election of remedies is also invoked, on the ground that plaintiff, instead of asserting his rights under his conveyance in West Virginia, elected to rely upon the original contract, and therefore is estopped to pursue a remedy inconsistent with the one there adopted.

We are not impressed with this contention. The original contract between plaintiff and Hollingsworth, in so far as it related to the 10,075-acre tract, became executed by the conveyance to plaintiff. He became vested in fee with an undivided one-fifth interest in these lands. Neither Hollingsworth nor Murray, her successor in title, could avoid that conveyance by invoking the illegality of the original contract. As to so much of the contract as related to these lands, the contract no longer remained executory. In other words though a contract be champertous, if money be paid or property conveyed in its discharge, the contract becomes executed, and the court will treat the joint beneficiaries of the champertous contract as standing *in pari delicto,* refusing aid either by compelling a repayment or by cancelation of the deed. "When the parties are *in pari delicto,* and the contract has been fully executed on the part of the plaintiff, by the conveyance of property, or by the payment of money, and has not been repudiated by the defendant, it is now equally well settled that neither a court of law nor a court of equity will assist the plaintiff to recover back the property conveyed or money paid under the contract. *Thomas* v. *Richmond,* 12 Wall. 349, 355, 20 L. ed. 453, 456; *Ayerst* v. *Jenkins,* L. R. 16 Eq. 275, 284, 42 L. J. Ch. N. S. 690, 29 L. T. N. S. 126, 21 Week. Rep. 878." *St. Louis, V. & T. H. R. Co.* v. *Terre Haute & I. R. Co.* 145 U. S. 393, 36 L. ed. 748, 12 Sup. Ct. Rep. 953.

The recitals in the Royal Land Company and Atlantic &

Ohio Railroad Company contracts, it must be presumed, were considered by the Virginia court, since it was an issue in the case, and not excluded either in the opinion or in the decree. These recitals did not constitute a discharge or execution of the original agreement. They merely provided for the payment to plaintiff of the fee stipulated in the contract in case of the sale of the land and payment in full of the purchase price, an event which never happened. Until the completion of the sale and the payment to plaintiff of his proportion of the proceeds, the contract remained unexecuted and subject to the defense of champerty. A different construction, however, must be placed upon the deed from Hollingsworth to plaintiff. With its execution and delivery to plaintiff, the contract became completely executed as to the interests of defendant in the lands therein embraced, and Hollingsworth and her successors in interest were thereafter estopped to challenge its validity. The rule is well stated in *Sellers* v. *Knight,* 185 Ala. 96, 108, 64 So. 329, as follows: "The charge that the conveyance of May 9, 1904, to Knight was affected with the champerty or maintenance inhering in features of the agreement of which the conveyance was a part cannot be sustained for this reason, if not for others: that the agreement involved was long since fully *executed.* Parties to unlawful agreements which have become executed are left by the law in the situation they have made. Being *in pari delicto,* the courts will not relieve against their executed contracts."

In the case of *John* v. *Larson,* 28 Wis. 604, 609, John, the grantee of one Miller, sought to recover possession of premises conveyed by Miller to Larson in execution of a champertous agreement. This is closely analogous to the present case in holding that, in addition to the general rule that a party is estopped by a deed executed in fulfilment of a champertous agreement, a successor in interest is in such privity with the grantor as to be likewise estopped. Murray, therefore, is in no better position than her grantor Hollingsworth. On this point, the Wisconsin court said: "What, then, are those rights under the agreement set up in the answer? We had occasion to consider

that question in the case of *Miller* v. *Larson,* 19 Wis. 463. That was an action brought by Miller against this same defendant to recover possession of the premises in controversy. To defeat a recovery, the defendant set up and relied upon the agreement contained in the third defense in the present answer. And while this agreement was there held to be champertous in its character, still it was determined that it had been so far executed that a court of justice would not interfere to deprive the defendant of the possession of the property acquired under it. The contract, though unlawful, yet having been executed, and the parties to it being *in pari delicto,* the law would leave them as they were, affording a remedy to neither. And the question is, Will the law be any more active in aiding a party to obtain the possession who stands in Miller's shoes, who has merely succeeded to his rights, and who has no superior equities in the property? If the court will aid a party thus situated, upon what principle does it proceed? For it is manifest that the plaintiff is a privy in estate to Miller, and is affected with notice of the defect in his title." With the execution of the deed from Hollingsworth to plaintiff, the original agreement became executed to the extent of the 10,075-acre tract of land, and Murray took with full notice of the conveyance, as well as the purpose for which the subsequent reconveyance was made.

But what effect must be given the reconveyance from plaintiff to Hollingsworth? Clearly this amounted only to the creation of Hollingsworth, a trustee for plaintiff to dispose of the lands and to turn over to plaintiff one fifth of the proceeds. While the reconveyance was made and the trust created in view of a sale to the Royal Land Company, it was made to facilitate the sale of the land, and the trust was never revoked by plaintiff nor renounced in any way by Hollingsworth or her successor Murray. It remained in force through the various transactions looking to a sale of the lands, and remained in full force when sale was finally made to the United States in 1916. It remained an unexecuted trust,—undoubtedly so recognized by the Virginia court, and, therefore, properly excluded from its consideration. Nor was plaintiff required to assert it in the

suit in West Virginia. The suit there was not instituted to recover land or an interest in land, nor was the title to land involved. Plaintiff was claiming one fifth of the purchase price of the land sold Wheelock by Murray, as compensation for services for recovery of the land under his original champertous contract. The suit here, in so far as it relates to the lands involved in this trust, is to subject a portion of the proceeds of the sale in the possession of the government to the satisfaction of plaintiff's interest. It is for the enforcement of an unexecuted trust, and involves different subject-matter from that in litigation in West Virginia. It, therefore, is in no respect *res judicata.*

Nor do we think plaintiff is barred relief under the doctrine of election of remedies. The rule of election is clearly but strongly stated in *Thompson* v. *Howard,* 31 Mich. 309, quoted with approval in *Robb* v. *Vos,* 155 U. S. 13, 41, 39 L. ed. 52, 62, 15 Sup. Ct. Rep. 4, as follows: "A man may not take contradictory positions; and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one, with knowledge, or the means of knowledge, of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again." . This rule, it will be observed, requires not only that the remedies be inconsistent, but such that the adoption of one will amount to a complete denial or negation of the other. It has no application where the remedies are concurrent and involve distinct matters, either of which may call for independent relief. Qualifying a similar rule to that stated above, in *Stark* v. *Starr,* 94 U. S. 477, 485, 24 L. ed. 276, 278, the court said: "But this principle does not require distinct causes of action,—that is to say, distinct matters,—each of which would authorize by its independent relief, to be presented in a single suit, though they exist at the same time and might be considered together."

In the present case, the suit in West Virginia, seeking to recover one fifth of the proceeds of a sale of the entire 43,000

acres of land, was not inconsistent with the outstanding unexecuted trust for a like division of the proceeds to be derived from the sale of 10,075 acres of the same land. The one was to enforce an alleged interest in the proceeds of the sale of land through a champertous contract which as to a portion of the land had become executed; the other is to enforce a trust by subjecting the funds derived from the sale of the land as to which the contract had become executed to the discharge of plaintiff's interest therein. At the time of the West Virginia suit, 10,-075 acres of the 43,000 acres of land in litigation was involved in an outstanding unexecuted trust awaiting a completed sale of the land. If plaintiff had prevailed upon his original contract and succeeded in fastening by decree his one-fifth interest in the proceeds to be derived from the sale to Wheelock, it would not have changed or strengthened his position as to the 10,075 acres, for in either instance he would have been compelled to await the event which has happened,—the sale to the government.

While there was nothing in the facts of the West Virginia case to preclude plaintiff from availing himself of this conveyance, he was there suing upon a contract. Had he sought to enforce his interest in the Wheelock fund through this conveyance, it would necessarily have been by a separate cause of action arising from the existence of an outstanding trust. "On principle, a point not in litigation in one action cannot be received as conclusively settled in any subsequent action upon a different cause, because it might have been determined in the first action. Various considerations, other than the actual merits, may govern a party in bringing forward grounds of recovery or defense in one action, which may not exist in another action upon a different demand. * * * A party acting upon considerations like these ought not to be precluded from contesting in a subsequent action other demands arising out of the same transaction." *Cromwell* v. *Sac County,* 94 U. S. 351, 24 L. ed. 195.

The decree is reversed with costs against the defendant Murray, and the cause is remanded with directions to retain control of the fund and proceed to ascertain the value of the one-fifth

interest in the 10,075 acres of land on the basis of the sale by Murray to the United States, and decree payment of the amount so found by defendant Houston, or his successor in office, direct to plaintiff, together with proper costs.

Reversed and remanded.

A petition for rehearing was denied April 27, 1917; a petition to modify the opinion and the decree was denied the same day, and a motion for the allowance of an appeal to the Supreme Court of the United States was denied May 17, 1917.